PITCHER and Others *v.* LAYCOCK and Others.

A conveyance of land by an infant is voidable merely, and not void.

Infancy is never presumed. As a ground of relief, it must be shown, and as a ground of defence, it must either be pleaded or given in evidence.

An infant's conveyance of land by bargain and sale, may be disaffirmed, on his attaining to majority, without entry, by a conveyance to another person.

It is not necessary to return the purchase-money, in order to disaffirm such conveyance.

APPEAL from the *Posey* Circuit Court.

DAVISON, J.—This was a bill in equity, filed on the 4th of *December*, 1847, by *Joseph* and *Samuel Laycock*, against *John Pitcher* and others. The object of the suit was to quiet the complainants' title to certain real estate described in the bill. The material facts of the case are these:

The land in contest was patented to one *Samuel R. Marrs*, who died in 1825, leaving *Mary Marrs* his widow, and the following named children and heirs at law, viz., *Elizabeth Marrs*, *Hannah Marrs* and *Samuel R. Marrs*, jr. These children, at their father's death, were all minors. *Elizabeth* intermarried with *John Blair*, and *Hannah* with *Joel Martin*. *Elizabeth* died soon after her marriage. After she died, and on the 24th of *November*, 1833, *Mary Marrs*, the widow, *Samuel R. Marrs*, jr.; *Hannah Martin*,

and her husband, *Joel Martin*, and the said *John Blair*, for the consideration of 200 dollars, jointly conveyed the land to one *George Bright*. At the date of this conveyance, *Hannah* and *Samuel* were still minors. *Bright*, in *November*, 1835, conveyed to *Thomas Jordan*, who afterwards sold the same land to *John N. Lilleston*, for 1,000 dollars. Of that sum 300 dollars were paid down, and for the balance, viz., 700 dollars, he gave *Jordan* a promissory note, and took his bond to secure a conveyance. *Lilleston*, in *August*, 1837, sold to *Joseph D. Carr*, and assigned him said bond, which, in *August*, 1839, was re-assigned by *Carr* to *Lilleston*. After this *Jordan* died, leaving *Alsey Jordan* his widow, and as his heirs at law, *Dicey Steel*, *William Steel*, *William Jordan*, *Jane Bush* and *Isaac Bush*. Said widow and heirs are made defendants. In *July*, 1839, *Mary Marrs*, *Hannah Martin*, and her husband, *Joel Martin*, for the purpose of avoiding the deed by them made to *Bright*, conveyed the land to *Samuel R. Marrs*, jr., who, on the 12th of *April*, 1840, and immediately after he arrived at full age, conveyed it to *Joseph* and *Samuel Laycock*, the complainants, for the consideration of 800 dollars. There is, in the conveyance from him to them, a clause which reads thus: "Provided that the covenants of warranty shall not, nor shall any covenant be construed or understood as extending to or including the estate or interest which *George Bright*, or those claiming under or deriving title through him, may have in the aforesaid land." On the 13th of *April*, 1840, *Lilleston* and *Carr*, by deed, released and quitclaimed all their title to the above premises to the complainants. After this, the heirs of *Thomas Jordan* brought ejectment for the same land in the *Posey* Circuit Court. Notice of suit was served on the complainants' tenant, and judgment by default was, at the *September* term of said Court, in the year 1840, entered in favor of said heirs. In *January*, 1841, *Jordan's* heirs conveyed the land to *Pitcher*, and *Pitcher* and *Lilleston* conveyed to *Samuel G. Lilleston*, who afterwards conveyed it to *Joseph McLane*. Soon after the latter conveyance, *McLane* died, leaving *Anna McLane*, his widow, and *John*,

*James, Basil, Elizabeth, Joseph* and *Hosea McLane*, his children and heirs. These heirs, with their mother, the said *Anna*, are also made defendants. *Pitcher*, when he received his conveyance from *Jordan's* heirs, had full knowledge of all the several deeds, contracts and other transactions before stated. In *August,* 1847, *Hannah Williams,* who, after the death of her husband, *Joel Martin,* had intermarried with *Willis Williams,* jointly with her husband, and with the intention more effectually to avoid the deed to *George Bright,* went on the land and there delivered a conveyance for it to the complainants.

*John Pitcher* and *Samuel G. Lilleston* answered the bill. All the *McLanes,* except *Anna,* being infants, answered by guardian *ad litem.* The other defendants were defaulted. Upon final hearing, the Court decreed that the complainants were the owners in fee of the undivided five-sixths of said land; dismissed the bill as to *Lilleston* and the *McLanes;* and enjoined the other defendants from molesting the complainants in their title to, and enjoyment of, the premises.

*Elizabeth Blair,* it appears, died before the execution of the deed to *Bright.* At her death she was the owner in fee of one-third of the land. By the law regulating descents then in force, one-half of that share descended to her mother, *Mary Marrs,* and the other half to her brother and sister, the said *Samuel* and *Hannah.* *Mary Marrs* being thus the absolute owner of one-sixth of the entire property, her conveyance to *Bright* vested in him that which had descended to her, without any subsequent right of avoidance by the grantors, or either of them. Hence, the decree proceeds upon the ground that the deed of 1833 was, so far as it included five-sixths of the estate, avoided, but that as to the one-sixth it was irrevocable.

When *Hannah* and *Samuel* conveyed to *Bright,* they were, no doubt, infants. That conveyance, however, was not absolutely void. It was merely voidable. Infancy is a personal privilege, and can be taken advantage of only by the infant after he arrives at years of maturity. He must do some act in avoidance of his deed, before a per-

son occupying lands as the rightful owner, having entered under the deed, can be put in the wrong. In the case before us, the inquiry at once arises, have the heirs of *Samuel R. Marrs*, deceased, avoided their deed of 1833? The record shows that *Hannah* was of full age when she conveyed to her brother *Samuel*. That conveyance was made in 1839, and duly recorded. It is further shown that in *August*, 1847, with her then husband, she went on the land, and, while there, delivered a deed to the complainants. Were these acts of *Hannah* sufficient to disaffirm her deed to *Bright?*

As a general rule, if a person out of possession convey land held adversely, the conveyance is void, on the ground of maintenance. 6 Blackf. 99.—4 Ind. R. 164. But does this principle apply to the case under consideration? In *Jackson* v. *Burchin*, 14 Johns. R. 124, the Court, referring to the ancient law, which required the entry of an infant, after he became of age, to avoid a feoffment, say, "If he has given livery of seizin, he must do an act of equal notoriety to disaffirm the first act; he must enter on the land and make known his dissent. If he has conveyed by bargain and sale, then a second deed by bargain and sale will be equally solemn and notorious in disaffirmance of the first." The same principle is held in *Jackson* v. *Carpenter*, 11 Johns. R. 539. There it is said that the doctrine requiring an actual entry to avoid a feoffment and livery made by an infant, does not apply to a bargain and sale. In *Tucker* v. *Moreland*, 10 Peters 73, judge *Story* refers to the cases in *Johnson*, and says, "The Court proceed upon principles which are in perfect coincidence with the common law, and are entirely satisfactory. It would seem, not only from principle, but authority, that the infant can manifest dissent in the same way and manner by which he first assented to convey. We know of no principle or authority that contradicts this doctrine. It seems founded in good sense, and follows out the principle of notoriety of disaffirmance in the case of a feoffment by an entry; that is, by an act of equal notoriety and solemnity with the original act." *Jackson* v. *Burchin*,

it is true, is in one respect dissimilar to the case at bar: the lands were uncultivated and unoccupied. Still, the decision of the Court upon the question whether entry was necessary, is not placed upon that ground. Indeed there is no valid reason why there should be an entry in any case of disaffirmance; it could not result in benefit to any one; and the law does not require idle and non-essential ceremonies. This view, we think, is fully sustained by principle and authority. A different conclusion might be deduced from the reasoning of the Court in *Bool* v. *Mix*, 17 Wend. 119. We are not, however, inclined to follow that case.

But the objection of non-entry, had it been well taken, would not avail the appellants, so far as *Hannah's* title is concerned, because she actually entered upon the premises, and while there delivered a conveyance to the complainants.

The next inquiry relates to the deed of *Samuel R. Marrs*, jr., executed on the 12th of *April*, 1840. By the appellants, an inquiry is raised as to whether he was of full age when that deed was made. The proof is that he was born in 1819. This, it must be conceded, leaves it uncertain whether he was of mature age when the complainants received their title. But upon whom rested the *onus* of proving the exact age of *Samuel R. Marrs*, jr., at the date of that title? The presumption of infancy is never indulged. As a ground of relief, it must be shown, and of defence, be either pleaded or given in evidence. This rule is well settled, and plainly relates *to the present* inquiry. Here the complainants were bound to prove the nonage of their grantor, when he executed the deed to *Bright*, because such proof was essential as a ground of relief. Still, it was plainly competent for them to rest their case on the presumption that he was not an infant when they received his conveyance. It was for the defence to repel that presumption. We must, therefore, in the absence of any direct proof on the subject, intend that *Samuel R. Marrs*, jr., was an adult when he made his deed to the complainants.

May Term,
1856.

PITCHER
v.
LAYCOCK.

But another ground is assumed.  We have seen that the deed under which the complainants claim title, contains the following clause:  "Provided that the covenant of warranty shall not, nor shall any covenant be construed or understood as extending to or including the estate or interest which *George Bright*, or those claiming under or deriving title through him, may have in the aforesaid land."  This proviso, it is said, is a complete ratification of *Bright's* title.  It evidently admits that *Bright* may have had an indefeasible title to a portion of the land; and he had to one-sixth of it, conveyed to him by *Mary Marrs* by her deed of 1833.  Here, then, was an estate not voidable, which the grantor intended to except from the operation of his covenant.  This was, no doubt, the object of the proviso.  The fact that he did convey to the complainants, at once shows that he did not intend to affirm his prior deed.  He certainly did not intend to confirm *Bright's* title, by doing the very thing calculated to defeat it.  The effect of the proviso, as to one-sixth of the estate, was to reduce the deed to a mere quitclaim; as to the five-sixths, it was a general warranty.  This seems to be its fair construction.

Again, it is insisted that though infants may rescind their conveyances of land, still "they can not rescind in part, so as to take back the land and still retain the purchase-money."  In support of this doctrine, we are referred to 1 *American* Leading Cases, 261, where it is said, "When an infant goes into chancery after age to set aside his conveyance, he must offer in his bill to restore the purchase-money."  This may be correct.  It is not, however, applicable to the case before us.  When he invokes the aid of a Court of equity, he may be required to do equity; still, he has the right to disaffirm without seeking the aid of any Court.  The object of the present suit is not to invalidate *Bright's* deed, but merely to quiet the complainants' title to five-sixths of the land.  Their bill assumes that the deeds of 1839 and 1840 annulled that of 1833, so far as they claim an interest in the premises; and the decree recognizes the disaffirmance by the *Marrs'* heirs

May Term,
1856.

as a settled element in the case. Moreover, it has been expressly decided that an infant who has conveyed his land, may, after he arrives at full age, disaffirm the conveyance, before returning the money which he has received on the contract. *Cressinger* v. *Welch*, 15 Ohio R. 156.— *Tucker* v. *Moreland, supra.* These authorities also decide that the deed of an infant may be revoked by his conveyance of the same lands, without entry, after he arrives at maturity.

It is said that the Circuit Court erred by its failure to decree in favor of the defendants for improvements made on the land; but in looking into the pleadings and proofs, we perceive nothing sufficiently definite to authorize such allowance.

*Per Curiam.*—The decree is affirmed with costs.

*D. McDonald*, for the appellants.

*J. G. Jones* and *J. E. Blythe*, for the appellees.