No. 13,074.

SHIRK *v.* SHULTZ.

INFANT.—*Contract.—Disaffirmance.—Rights of Parties.*—While an infant, who has purchased goods on his own account, may disaffirm his contract and recover the money paid, without first returning or offering to return them, he can not, after such action, hold the goods purchased as against his vendor.

SAME. — *Partnership.— Disaffirmance of Contract of. — Receiver.— Priority of Claims.*—Where an infant partner renounces and disaffirms his contract of partnership, and files his petition in court asking the appointment of a receiver, he will be held to have thereby consented that the court shall deal with the assets and close out the business so as to settle the ultimate rights of the parties concerned ; and in such case, the court will treat such assets as partnership assets, as in any other case, and apply them first to the payment of the debts of the firm.

From the Decatur Circuit Court.

*J. K. Ewing* and *C. Ewing, Jr.,* for appellant.

*J. D. Miller* and *F. E. Gavin,* for appellee.

ZOLLARS, J.—Appellant alleges in his complaint that, in October, 1884, when he was a minor, he entered into partnership with appellee for an indefinite time, in the business of upholstering and dealing in furniture, under the firm name of Shirk & Shultz; that he still is a minor; that he invested in the business $500; that the firm has on hand furniture and goods of the value of $850, and is in debt over $600; that "he is advised by his guardian to renounce such partnership and withdraw from said firm, and he hereby renounces such arrangement and asks to avoid, annul and undo all of his obligations in that behalf;" that Shultz is insolvent, and that the firm creditors will exhaust the assets of the firm unless a receiver shall be appointed to take charge of them, etc.

The prayer is for the appointment of a receiver to take charge of the assets of the firm, and convert them into money, and pay, first, to appellant the amount invested by him, and second, the firm debts.

The court made a special finding of facts, in substance, that, in October, 1884, Shirk and Shultz entered into partnership and continued in business until the commencement of this action, in August, 1885. Shirk is a minor and has a guardian. He entered into the partnership and put into the business $271.40 with the consent of his guardian. Of that amount $74.50 was paid to Shultz to be used in the purchase of goods for the firm, and it was so used. The balance of the $271.40 was paid by Shirk on debts of the firm, for goods and labor of employees.

During the existence of the firm, Shirk drew out $100. Shultz put into the business $260 and drew out nothing. The assets of the firm, at the time this suit was commenced, amounted in value to $800, and its debts aggregated $700. Shultz is insolvent.

Upon the facts so found, the court below concluded as a matter of law, that the firm should be dissolved, and that a receiver should be appointed to take charge of the firm as-

sets, convert them into money, and pay, first, the costs of this suit, second, the firm debts, and third, divide the surplus, if any, between the partners. A receiver was accordingly appointed.

Appellant excepted to the conclusions of law and contended, and still contends, that, upon the facts found by the court, he is entitled to have refunded to him from the assets of the firm the amount which he invested, in preference to the partnership creditors and all others. Whether or not he is so entitled is the one question for decision.

The facts in the case of *Dunton* v. *Brown,* 31 Mich. 182, were these : Dunton, a minor, entered into partnership with Brown, and put about $100 into the business. After the business had been continued for about three months, Dunton informed Brown that he would not longer continue as a partner, and that if he remained any longer he must be paid for his services. To that Brown would not consent. Dunton went away for a while, but subsequently returned and continued for nine months. After leaving again, he brought an action to recover back the $100, with interest, and for his services. It was held that he could not maintain the action. In speaking of the partnership agreement, it was said : " It is at best only voidable ; and we have found no authority which enables the infant or his guardian to determine whether a voidable contract shall be affirmed or annulled, while the infancy continues. It appears to be a matter for his own decision when he arrives at mature age. \* \* And it is also worthy of consideration, whether, inasmuch as the partnership business continued and ended before suit, and before majority, it does not come within the rule which protects executed contracts in many cases. *Squier* v. *Hydliff,* 9 Mich. 274. Without deciding what may happen when the infant reaches majority, we think it impossible to sustain an implied assumpsit now against the terms of the only agreement ever made, which was certainly not a nullity."

In the case of *Bush, etc.,* v. *Linthicum,* 59 Md. 344, one

partner brought a suit for the dissolution of the firm and the appointment of a receiver to take charge of the firm assets and pay the firm debts, etc.    In bar of the suit, the other partner interposed the plea of his infancy.    In the decision of the case, after citing and approving the Michigan case above, and the case of *Armitage.* v. *Widoe,* 36 Mich. 124, which followed it, the court said : " Having formed this partnership, he can not so far repudiate it during minority, as to escape such consequences of partnership as do not involve personal liability for claims against the firm, or costs incident to the legal settlement of its affairs.    Such partnership must be dissolved as any other; and the partnership assets must be assignable to partnership creditors.    What his rights may be, as against his adult copartners, when he reaches majority, we do not decide."

The case of *Kitchen* v. *Lee,* 11 Paige Ch. R. 107, frequently cited by text-writers, was this :    Kitchen and Lee were partners.    During the existence of the partnership they contracted debts as partners.    Kitchen retired from the business, and relinquished to Lee the goods of the firm, upon the condition that he would pay, or procure to be paid, the debts then due from the firm, and indemnify him, Kitchen, against the same.    Previous to the retirement of Kitchen from the firm, Lee represented to him that he was twenty-one years of age.    Subsequent to the dissolution of the firm Lee refused to pay the firm debts, upon the ground that he was a minor, and not legally liable to pay such debts, and made a pretended sale of the goods to Price, who paid no consideration, and took them with knowledge of the facts that the firm debts were not paid, and that the sale to him was fraudulent as against Kitchen.

Stating the above facts in his bill, Kitchen prayed for the appointment of a receiver to take charge of the goods and apply them to the payment of the partnership debts.    To the bill Lee pleaded that at the time of making the agreement to pay the firm debts he was a minor, and that Kitchen had

Shirk v. Shultz.

notice of that fact. WALWORTH, Chancellor, held that the contract on the part of Lee to pay the debts was one which he might affirm or repudiate at his election, but that he could not be permitted to retain all of the partnership effects, and at the same time refuse to perform the condition upon which Kitchen's interest in the effects of the firm was to become his property. That if Lee elected to rescind the agreement made upon the retiring of Kitchen from the business, the latter had a right to insist that his interest in the copartnership effects should be applied to the payment of the debts in the same manner as if the dissolution had not taken place. It was further said: "The rule of law on the subject is, that an infant can not be permitted to retain the property purchased by him and at the same time repudiate the contract upon which he received it. * * * If the goods in this case had belonged to the complainant (Kitchen) exclusively at the time of the agreement, and the infant had repudiated his agreement when he became of age, trover or replevin would have been the proper remedy for the goods if they remained unchanged. (*Badger* v. *Phinney*, 15 Mass. Rep. 359). But this being copartnership property, previous to the agreement, the only remedy of the complainant was in this court. And this plea of infancy is not a full defence to the case made by the bill."

In the case of *Moley* v. *Brine*, 120 Mass. 324, three persons, one of whom was a minor, were partners, and put into the business different amounts.

It was held that upon a dissolution of the partnership the assets, upon the settlement of its business, being less than the amount contributed by all to the common stock, should be divided among the partners according to the amount of their contributions, and that the deficiency and loss should be borne by the partners in the same proportion in which they were to bear profits and losses. In other words, that the minority of one of the partners gave him no advantage in the particulars named. Of him it was said: "He actu-

ally entered into the partnership, had the benefit of it while it lasted, and drew out the greater part of his contribution. The assets remaining at the time of the dissolution being insufficient to pay the claims of all the partners, the loss of capital must fall upon the three partners in equal proportions, and the infant can not throw upon his copartners the obligation of making up the deficiency."

In the case of *Furlong* v. *Bartlett*, 21 Pick. 401, one of the partners made a general assignment, in the name of the firm, of all the partnership property in trust for the payment of the debts of the company, and delivered the property to the assignee. The other partner, who was a minor, ratified the assignment, but on coming of age brought an action against the assignee for the alleged unlawful taking and asportation of the property. It was held that trespass would not lie. In the decision of the case it was said : " The court entertain strong doubts, whether under the peculiar circumstances of this case any action will lie, or whether the plaintiff has any remedy unless for his share of the balance, if the partnership should be ultimately solvent; but of this, as it is not now before the court, they express no opinion."

The case of *Moley* v. *Brine, supra,* is based upon the proposition that where an infant has enjoyed the benefits of that for which he paid his money, he can not recover back the money. In support of the conclusion reached, the court cited *Breed* v. *Judd*, 1 Gray, 455; *Holmes* v. *Blogg*, 8 Taunt. 508; *Aldrich* v. *Abrahams*, Hill & Denio, 423; *Medbury* v. *Watrous*, 7 Hill, 110; *Heath* v. *Stephens*, 48 N. H. 251.

The case of *Breed* v. *Judd, supra,* was based really upon two propositions, first, that in order to rescind a contract, an infant must place the other party *in statu quo,* and second, that an infant can not rescind an executed contract where he has enjoyed the benefits of it.

The ground of the judgment in the case of *Holmes* v. *Blogg, supra,* was, that the infant had received something of value for the money he had paid, and that he could not

put the other party in the same position as before. For those reasons it was held that the infant could not recover back the money he had paid on a lease.

In *Aldrich* v. *Abrahams, supra,* it was said : " It has been holden that by avoiding an executory contract the infant only cancels his obligation to perform it. He does not acquire the right to recover back what he had paid, or for services which he had rendered under the agreement while it remained in force."

In the case of *Medbury* v. *Watrous, supra,* the court endorsed the doctrine, that where an infant pays money on a contract and enjoys the benefit of it, and then avoids it, he can not recover back the consideration paid, but suggested that if he has but partially enjoyed the benefits of the contract, he ought to be allowed to recover the difference.

It was announced as the law in the case of *Heath* v. *Stephens, supra,* that an infant, upon rescinding an executed contract, may recover for what he has done or paid under it, provided he restore or account for what he has received under the contract.

It will be observed that the decision in the Michigan case, above cited, is based upon the proposition that an infant can not disaffirm a partnership agreement during his minority. The reasoning in that case was adopted in the Maryland case.

The decision in the case of *Kitchen* v. *Lee, supra,* was based largely upon the proposition that an infant can not be permitted to retain the property purchased by him, and at the same time repudiate the contract upon which he purchased it.

It may be said of most, if not of all, the propositions upon which the decisions in the cases cited are based, that they have not been regarded as the law in this State. We have stated them for the purpose of determining whether or not the conclusions in those cases may be regarded as correct, notwithstanding the propositions upon which they rest may be regarded as incorrect.

The holdings of this court have been, that all voidable con-
tracts by an infant in relation to personal property may be
disaffirmed by him during minority. *Carpenter* v. *Carpenter,*
45 Ind. 142 ; *Indianapolis Chair M'f'g Co.* v. *Wilcox,* 59
Ind. 429, and cases there cited; *Ayers* v. *Burns,* 87 Ind. 245,
and cases there cited ; *Rice* v. *Boyer,* 108 Ind. 472, and cases
there cited, including cases by the Supreme Courts of Ver-
mont, Massachusetts and New York.

In support of the right of infants to disaffirm such con-
tracts during minority, see, also, Tyler Infancy (2d ed.), pp.
70 and 72, and cases there cited; Schouler Domestic Rela-
tions, section 409 ; Lindley Partnership, star p. 83.

The Supreme Court of Maryland, since the case above cited
from that court, has held that an infant may thus disaffirm
during minority. *Adams* v. *Beall,* 7 Central Rep. 430. And
so it has been the holding of this court, that in order to dis-
affirm and maintain an action during minority for his property,
or for money paid on a voidable contract, it is not necessary
for the infant to return what he has received, or to place the
other party *in statu quo.* *Pitcher* v. *Laycock,* 7 Ind. 398, and
cases there cited ; *Miles* v. *Lingerman,* 24 Ind. 385 ; *Briggs*
v. *McCabe,* 27 Ind. 327 (89 Am. Dec. 503) ; *Towell* v. *Pence,*
47 Ind. 304; *Carpenter* v. *Carpenter, supra ; White* v. *Branch,*
51 Ind. 210.

The statute of 1881 has changed the rule as to real estate,
but that change is not material here.    Section 2945, R. S.
1881.

And so, upon ample authority, this court has repudiated
the doctrine that " If an infant advances money on a voidable
contract which he afterwards rescinds, he can not recover this
money back, because it is lost to him by his own act, and the
privilege of infancy does not extend so far as to restore this
money unless it was obtained from him by fraud." *House* v.
*Alexander,* 105 Ind. 109, and cases there cited.

The cases thus reviewed lend aid to the proposition that
in the case before us appellant can not, through the instru-

...mentality of the court, exercising equitable powers, and the receiver appointed by it, have the assets of the firm appropriated in the way of refunding to him what he invested in the business, and thus leave the firm creditors wholly or partially unpaid. And, so far as they sustain that proposition, we approve of them, although disapproving, in the main, the reasoning upon which they rest.

Had appellant purchased the goods on his own account, and paid for them, he might have disaffirmed the contract and recovered the amount paid, without first returning or offering to return them to the person from whom he purchased them. It does not follow from that, however, that after having thus disaffirmed the contract, he could, nevertheless, hold the goods as against the person from whom the purchase was made. He would not be allowed to retain the goods after having thus recovered what he paid for them.

When an infant thus repudiates a contract, he repudiates it for all purposes. He can not repudiate it so as to escape payment for an article purchased, and still hold the article as against the person from whom the purchase was made. As was said in the case in Paige, supra, when a contract is thus repudiated, the vendor may have his action to recover the goods from the infant if they remain in his hands unchanged. And so, if appellant had purchased the goods on his own account, he might have disaffirmed the contract and refused to pay for them without returning or offering to return them to the vendor. But after having thus disaffirmed the contract, and refused to pay, he could not hold the goods as against the vendor. See Kitchen v. Lee, supra; Rice v. Boyer, 108 Ind. 472.

What he could not do otherwise, he certainly can not accomplish through a court of equity. Having gone into court, and asked that the assets of the firm should be taken charge of by it, through a receiver, he must be held to have consented that the court shall deal with them and the rights of all concerned as the law and equity may require. Having

thus invoked the interposition of the court, he must be held to have consented that it shall close out the business so as to settle the ultimate rights of the parties. If it be said that his disaffirmance of the contract is such as would otherwise have relieved him from the obligation to pay for the goods, then the court having charge of the goods has the right to see to it that they, or the money that may be realized from the sale of them, shall be returned to the vendor.

In our judgment, however, appellant's course has been such as to ratify the purchase of the goods and all that has been done by the firm. He states in his bill that he "renounces the partnership arrangement, and asks to avoid and annul all of his obligations in that behalf," but, at the same time, he treats the goods and assets on hand as partnership assets, and asks the court to take charge of and deal with them as such. His disaffirmance puts an end to the contract by which he became a member of the firm, but by asking the court to take charge of the goods as assets of the firm, as to them, he not only does not disaffirm, but ratifies all that was done in the purchase of them. As to them, he can not disaffirm and at the same time treat them as partnership assets. Having treated them as assets of the firm by asking the court to deal with them as such, the court will deal with them as partnership assets, as in any other case, and apply them first to the payment of the debts of the firm. 2 Lindley Partnership, star p. 1040.

This is not an action against the other partner to recover a personal judgment against him for the amount paid into the business by appellant. What might be the rights of the parties in such an action we do not decide. It is sufficient here, that, in our judgment, the conclusions of law by the court below, upon the facts found, were correct, and the proper decree was entered.

Judgment affirmed, with costs.

Filed Jan. 20, 1888; petition for a rehearing overruled May 16, 1888.