SETH WYMAN *versus* PENOBSCOT AND KENNEBEC RAILROAD COMPANY.

Where a railroad company commenced the running of cars upon their road, before they had erected fences which they were bound to erect, and the plaintiff's horse, rightfully on land adjoining, had strayed on the track of the company and was killed by their engine, the company will not be exonerated from liability for damages, by proof that, at the time, certain persons were operating the road, under an agreement with the company that they should receive and retain the earnings, when it was further stipulated in the agreement that "the trains shall run under the direction of the company, and be under their control."

ON AGREED STATEMENT OF FACTS.

This is an action of TRESPASS ON THE CASE, to recover the value of two horses belonging to plaintiff. Plea, not guilty.

It is agreed that the company had been duly and legally organized; the railroad authorized by their charter located, built and in operation by drawing over it trains for the transportation of passengers between Bangor and Waterville, which commenced to run daily, excepting Sundays, between those termini, on the first day of August, A. D. 1855, and have so

continued since that time; that, on Aug. 31st, 1855, the two horses mentioned in plaintiff's writ were upon the track of said road in Benton, and were killed by the locomotive in drawing one of the regular passenger trains; and that said horses strayed on to said track by reason of the want of fences on the exterior lines of said railroad, where it passed through improved land in the town of Benton; and that the horses were rightfully in the field from whence they went on to the railroad; and that the fences for several weeks prior to that time had been in want of repair and insufficient.

The defendants offered to prove in defence, that Moor & Dunning contracted with defendants to build and complete this railroad, including the fences on the exterior lines of the same, for a specified sum for the whole job, and that, at the time said damage was done, Moor & Dunning were running the trains under a written agreement, and at that time the road had not been completed so as to discharge the contractors from their contract for building.

In the agreement between the defendants and Moor & Dunning, as to the running of the road in August, are the following stipulations: — " that regular passenger trains shall commence running on the morning of July 30, 1855; that Moor & Dunning shall run the same at their expense, and, for so doing, shall receive and retain the receipts. The trains shall run under the direction of the company, and be under their control. Said Moor and Dunning shall pay such compensation for the use and damage of the furniture and cars and engines as the company shall decide. This arrangement to end on the last day of August next, and the trains shall be run by the company, under its management and for its own use, on and after the first day of September next.

If the facts and evidence offered by defendants are admissible, they are to be considered in the case, and, if on the whole case, the plaintiff is not entitled to recover, a nonsuit is to be entered; otherwise, a default is to be entered and damages are to be assessed.

*W. S. Heath,* for plaintiff, argued:—

I. On the statement of facts, the plaintiff is entitled to re-
cover.   Charter of defendants, Special Laws, 1845, c. 285,
§ 11; R. S., 1841, c. 81, § 21; Laws of 1853, c. 41, § 20;
*Whitney* v. *At. & St. Law. R. R. Co.,* 44 Maine, 362; *Norris*
v. *Androscoggin R. R. Co.,* 39 Maine, 278.

II. The evidence offered by defendants, ought not to be ad-
mitted, for it does not affect their liability to the plaintiff.

In the first place, it is contended for the plaintiff, that a
company, engaged in the prosecution of some great public
work, endowed by law with certain powers and privileges,
and subjected to certain duties, cannot shield themselves from
their responsibility for damages, *arising from an omission* on
their part to perform one of those duties required by law, by
alleging a contract with other parties to perform such duties.
*Lowell* v. *Boston & Lowell Railroad Co.,* 23 Pick. 24; *Bailey*
v. *Mayor & Corp. of N. Y.,* 2 Denio, 433: *Hilliard* v. *Rich-
ardson,* 3 Gray, 349.

But, even if the view of the law taken in the cases cited,
should not be taken by the Court, it is contended that, from
the evidence offered by the defendants, it appears, that while
the contractors were running the road from Waterville to
Bangor, the trains were under the control and management of
the defendant corporation, and that the contractors were act-
ing as their *agents* when the injury occurred to the property
of the plaintiff, on account of which this action is brought.

*Drummond,* for the defendants, argued:—

That, upon the facts appearing in the case, the defendants
are not liable.   There is neither any admission nor proof of
carelessness on the part of any one.

The road was in the possession of the contractors who
built the road under contract; and they were also to make
the fences, which part of the contract they had not fully com-
pleted.   The plaintiff's remedy is against them.   The statute
of 1853, making the corporation liable for the acts of con-
tractors, is limited to trespasses on real estate.   The section

relating to fences does not apply, as it merely imposes a penalty for neglect to build and maintain fences required to be built by the charter.

At common law the proprietor of land was not bound to fence it. Every man was obliged to keep his cattle on his own premises. Redfield on Railways, p. 374, § 167; *Rust* v. *Low*, 6 Mass. 90.

By sect. 11, of defendants' charter, they were required to build fences, and, it is upon this provision of their charter, that the plaintiff depends. By the evidence offered by the defendants, it is proved that the company contracted to have their fences built, and that the contractors, when this accident happened, had not completed the fences. They were running the trains at their own expense and for their own benefit. By their neglect the fences were not built, and, by their neglect, the plaintiff's horses were killed.

Is, then, the company liable for the acts of the contractors? See Redfield on Railways, p. 377, § 168, and cases cited p. 377.

But it is said that the contract, by which these trains were run, expressly provides that " the trains shall run under the direction of the company, and be under their control." So it does; but the horses were not killed by any negligence or carelessness in the management of the trains. If they had been, the defendants would have been liable. If it appeared that those managing the train were the servants of the company, and by their negligence, &c., the horses had been killed, the defendants would have been liable.

But this accident happened through the negligence of the contractors, over whom the defendants had no control. In *Steele* v. *South-eastern Railway*, 32 Eng. Law and Equity Reports, 366, the action was for damage done by the negligent manner in which certain work was done by the servants of a contractor, who was bound to do the work under the superintendence of a surveyor of the company. The injury happened because the workmen did not follow his directions. The Court held the action could not be maintained, and say,

" this work was done under a contract, and there is nothing to show negligence in any one, for whose acts the company are responsible." " This," says REDFIELD, " seems to be placing the matter on its true basis."

In this case, the damage was not done by any negligence or carelessness of the company or their servants; it happened by the negligence of the contractors, over whom the defendants had no control. The distinction is obvious, and, according to the authorities cited, the action cannot be maintained.

The opinion of the Court was delivered by

APPLETON, J.—It is the duty of the defendants to erect and maintain substantial and sufficient fences, on each side of their road, where passing through inclosed or improved land. This duty they neglected, and the plaintiff's horses, rightfully on his own land adjoining, strayed on the track of the defendants, by reason of the want of fences on the exterior lines of the railroad, where it passed through improved lands, and were killed by their engine. From the facts, as admitted, the defendants, in consequence of their own neglect, are to be held liable. *Norris* v. *Androscoggin Railroad Co.,* 39 Maine, 278.

Nor is the defendant corporation to be relieved from responsibility because, at this time, Messrs. Moore & Dunning were to receive and retain the receipts. In their agreement with the defendants, it is stipulated that " the trains shall run under the direction of the company and be under their control." It is immaterial to the person injured, who may receive the proceeds of the running. It is sufficient that the direction and control are in the defendants. Having this direction and control, they are justly responsible for any injuries occurring in consequence of their neglects. *Whitney* v. *At. &amp; St. Law. Railroad Co.,* 44 Maine, 362.

*Defendants defaulted.*

TENNEY, C. J., and RICE, CUTTING, GOODENOW, and DAVIS, J. J., concurred.