(35 South. 624.)

No. 14,640.

MUNTZ v. ALGIERS & G. RY. CO. et al.*

(Nov. 30, 1903.)

STREET RAILROADS—OPERATION—LEASE OF
ROAD—NEGLIGENCE OF LESSEE.

1. A railroad corporation, by its very incorporation under the laws of the state, assumes as one of its primary obligations that it shall operate the road under such conditions as to properly secure the safety of the general public.

2. It is liable for injuries to persons caused by the wrongful or negligent operation of the cars upon the road, whether operated by itself or by another corporation to which it had leased it.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by George Muntz against the Algiers & Gretna Railway Company and others. Judgment for defendants, and plaintiff appeals. Reversed.

P. F. & W. J. Hennessey, for appellant. Frank Edward Rainold, for appellees.

### Statement of the Case.

NICHOLLS, C. J. The plaintiff brought suit in the parish of Orleans against the Algiers & Gretna Street Railway Company (or the Algiers, McDonoughville & Gretna Street Railway Company) and the Jefferson Street Railway Company, seeking to recover from them in solido the sum of $15,000, with legal interest. The grounds upon which this demand was based are: That the defendants were corporations organized under the laws of Louisiana, and doing business as common carriers of passengers in the parish of Orleans, conjointly and separately operating horse cars between the parish of Jefferson and the Fifth District of the parish of Orleans. That on or about the 27th of December, 1901, about 7 o'clock in the evening, in Goldsborough parish of Jefferson, Idelia May Muntz, the minor child of the plaintiff, aged about 12 years, was knocked down and run over by a car owned and operated by the defendants, so that her neck and limbs were broken and skull fractured, besides suffering other severe injuries, from which, after the most intense agony, she died shortly

thereafter. That her death was caused by the fault and gross negligence of defendants, and by the fault and negligence of the driver in charge of the car which ran over and killed her, because the defendants failed to provide their car with proper lights, and with proper appliances and means to give signals and warning of the approach of the car. That the track upon which defendants' car was operated was of a narrow gauge, and laid on the public road, and his child was lawfully thereon, and did not know and was not warned of the approach of the car by which she was knocked down and killed, and received no warning either by the car or the driver thereof, and after she was knocked down and run over by the car the driver never stopped it, but continued on his journey to the terminal of the road in Gretna; and the said driver, if he had been attending to his duties, could have seen the child and have prevented the act which caused her death, but neglected to do so; and the car was running at an unlawful rate of speed through the town when it ran down, mangled, and killed his child. That the space between the tracks of the railway was generally used by the public as a foot passage, and the child's injuries and her resulting death were not caused by any fault on her part, and her injuries and death were caused directly and solely by the fault and gross negligence of defendants and their employés and agents.

The Jefferson Railway excepted that the court was without jurisdiction ratione personæ, as its domicile was in the parish of Jefferson, where the trespass complained of was alleged to have occurred. The exception was sustained, the suit as to that company was dismissed, and no appeal was taken from the judgment. The Algiers & Gretna Railway Company excepted to the petition:

First. Because the court was without jurisdiction, and, should the exception be overruled, that the petition was contradictory, self-destructive, and the allegation in the petition that the Algiers Railway Company and the Jefferson Street Railway Company were "conjointly and separately operating horse cars" was without sense and meaning; that, as a matter of fact, plaintiff was in possession of full knowledge concerning its relation to the street railway in question; that it leased out

---

*Rehearing denied January 18, 1904.

said roadbed and tracks to Thomas Pickles on the 7th of March, 1903, and the cars of said road never belonged to it; that Thomas Pickles died, and his heirs sublet said road to Peter Meid on the 27th of August, 1897, by notarial act before Frank E. Rainold, notary; that on the 23d of January, 1899, he leased the same to Anthony Rubrich, and Anthony Rubrich, by notarial act of the 29th of April, 1899, sold his rights in and to the lease to the Jefferson Railway Company; that plaintiff knew that the Jefferson Railway Company was alone operating the road; that the petition disclosed no cause of action, because the driver through whose carelessness it was alleged the accident occurred was not and never had been in the employ of the Algiers & Gretna Railway Company.

It was subsequently agreed between plaintiff's attorneys and the attorney of the Algiers & Gretna Railroad Company that "the exception to the jurisdiction and the formal exception of no cause of action were waived," and the attorney for the latter named company "agreed to try the issue whether that company was lessor, and whether, as lessor, it could be held in any manner for the accident, as raised by his second exception."

Evidence was accordingly heard on these issues. The district judge sustained the second ground of exception filed by defendant, and rendered judgment in its favor and against the plaintiff, dismissing his suit. Plaintiff appealed.

The act by which the Algiers & Gretna Railroad Company was incorporated is not in the record. Mr. Rainold, as witness, states it was incorporated on the 11th of February, 1882, by act before Samuel Flower, notary public; that the original franchise to run a street railroad in Algiers was given, he thought, to a syndicate of about 15 persons, whom he named; and that they transferred their right to the Algiers & Gretna Railroad Company.

There is no direct evidence in the record showing how or from whom and when that company acquired, or claimed to have acquired, otherwise than through its act of incorporation, the right to operate a railway for transporting freight and passengers outside of the limits of the city of New Orleans beyond and into the parish of Jefferson and

over its roads; but there is copied into the transcript an ordinance of the police jury of the parish of Jefferson (but with nothing showing the date of its passage) granting to the same parties, who were named by Mr. Rainold as composing the syndicate to whom the city of New Orleans had made its grant, and to their successors, transferees, and assigns, the right of building and operating, from Algiers, in the parish of Orleans, to the parish line of Jefferson, a track of railroad for the transportation of passengers and freight from Harvey's Canal, into the parish of Jefferson, to the lower line of that parish. However this may be, there is no doubt that the Algiers & Gretna Railway Company claimed to have in some way acquired such a right, inasmuch as on the 7th of March, 1893, by act before Frank E. Rainold, it leased for 10 years to Thomas Pickles, who was one of the parties named as forming the syndicates referred to, "all the franchises of the Algiers & Gretna Railway Company, including its roadbed, and the right to operate a railway for transporting freight and passengers between the town of Gretna, in the parish of Jefferson, and the Fifth District of the city of New Orleans, formerly known as Algiers, and the tracks as laid between said terminals."

On the 27th of August, 1896, by act before Rainold, Mrs. Henrietta Cook Pickles, wife of Alexander M. Halliday, and Mrs. Josephine E. Harvey, widow of Robert S. Harvey, the heirs of Thomas Pickles, leased the same property, under the same description, to Peter Meid, and, additionally, "the stables and real estate situated on Bouny street, in the Fifth District of New Orleans," together with the cars then used in the operation of said Algiers & Gretna Railway, which numbered five, and the entire equipment of the road, for the term of five years, to begin on the 10th day of September, 1897, and to end on the 9th of September, 1902. The lessors simultaneously sold and transferred to the lessee the horses and mules—17 in number—they used in the operation of the Algiers & Gretna Company.

On the 23d of January, 1899, by act before Rainold, notary, Peter Meid leased to Anthony Rubrich until the 9th day of September, 1902, the same property, under the same description, which was leased by the

Algiers & Gretna Railroad Company to Thomas Pickles; also the stables and real estate in McDonoughville, in the parish of Jefferson; also all the cars used, at the time of this lease to Rubrich, in the operation of the Algiers & Gretna Railway Company, and the entire equipment of the road.

On the 29th of April, 1899, by act before Rainold, notary, Anthony Rubrich sold and transferred to the Jefferson Railway Company "all the rights which he acquired by reason of the notarial contract executed before Rainold, notary, on the 23d of January, 1899, to which contract Peter Meid, Anthony Rubrich, Ella Mills, Mrs. Josephine E. Harvey, and Mrs. A. M. Halliday were parties."

The Jefferson Railway Company was incorporated by notarial act before Rainold, notary, on the 4th of April, 1899. The purposes for which it was incorporated were declared to be: "To acquire by lease the right to operate and maintain a railway system between Algiers, in the parish of Orleans, and Gretna, in the parish of Jefferson; to operate and maintain between said terminals for the transportation of passengers and freight; and more especially to acquire all the right of Anthony Rubrich under the contract made by him with Peter Meid and Mrs. A. M. Halliday and Mrs. Josephine E. Harvey, which contract was executed before Frank E. Rainold, notary public, on the 23d of January, 1899; and that this corporation shall have the right to acquire such franchises, privileges, and property, both movable and immovable, as shall be necessary for its business or incidental thereto."

Gretna and McDonoughville are unincorporated villages, situated in the parish of Jefferson, the latter between Gretna and the upper line of the city of New Orleans. The accident occurred in a street of McDonoughville. At the time of the accident the only property owned by the Algiers & Gretna Railroad Company were its franchise and the road tracks of the road between Algiers and Gretna. The railroad between Algiers and Gretna was being operated at that time by the Jefferson Railway over the roadbed and tracks of the Algiers & Gretna Company under its lease, but the car which ran over the child belonged to it, and the driver in charge of the same was one of its employés.

## Opinion.

The theory upon which the Algiers & Gretna Company claims to have been released from responsibility in the premises is that, under the laws of Louisiana, the franchises and property of a railroad company can be mortgaged and sold, and that the rights granted by the city of New Orleans and by the police jury of the parish of Jefferson to the syndicates mentioned—and which rights that company acquired—were by their express terms assignable in character, and that, being such, the company had the right to make the lease it did; that by so leasing it was released from all obligations resulting from the negligent operation of the road, the leasing company being alone responsible.

They cite in support of their position articles 2317 and 2679 of the Civil Code; Pierce on Railroads, 283, 284; 23 Am. & Eng. Ency. of Law (2d Ed.) p. 785; Mahoney v. Atlantic R. R., 63 Me. 68; Ditchett v. Spuyten, 67 N. Y. 425; Norton v. Wiswall, 26 Barb. 618; Virginia Midland v. Washington (Va.) 10 S. E. 927, 7 L. R. A. 344; Hart v. N. O. & C. R. R., 4 La. Ann. 262; McDonald v. Railway Co., 47 La. Ann. 1440, 17 South. 873; McConnell v. Lemley, 48 La. Ann. 1438, 20 South. 887, 34 L. R. A. 609, 55 Am. St. Rep. 319; Thompson v. Dotterer, 105 La. 37, 29 South. 483; Farmer v. Myles, 106 La. 333, 30 South. 858; Goodwin v. Bodcaw Lumber Co., 109 La. 1050, 34 South. 74.

The plaintiffs refer to Morawetz, Corporation Law, 1120; York & M. Line R. R. v. Winans, 17 How. 30, 15 L. Ed. 27; Railroad v. Brown, 17 Wall. 445, 450, 21 L. Ed. 675; Thomas v. Railroad, 101 U. S. 71, 25 L. Ed. 950; Oregon R. R. Co. v. Oregonian R. Co., 130 U. S. 1–39, 9 Sup. Ct. 409, 32 L. Ed. 837; Central Transp. Co. v. Pullman Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; Wyman v. Railroad Co., 46 Me. 162; Middlesex R. R. v. Boston & Chelsea R. R., 115 Mass. 347; Braslin v. Sommerville Horse R. Co., 145 Mass. 64, 13 N. E. 65; Davis v. Old Colony R. R., 131 Mass. 258, 276, 41 Am. Rep. 221; Commonwealth v. Smith, 10 Allen, 455, 87 Am. Dec. 672; Railroad Co. v. Whipple, 22 Ill. 105; Abbott v. Johnstown R. R., 80 N. Y. 27, 36 Am. Rep. 572; Freeman v. Rail-

road Co., 28 Minn. 444, 10 N. W. 594; Macon & A. R. Co. v. Mayes, 49 Ga. 355, 15 Am. Rep. 678.

Referring to the authorities cited by the parties in 23 Am. & Eng. Ency. of Law (2d Ed.) pp. 784, 785, under the title "Railroads," we find that different rules have been adopted in different jurisdictions as to the effect upon the legal liability of a railroad company, which had made a lease of its road, for the negligent operation of the same by its lessee. The first rule and the line of decisions supporting it are found on page 784 of that work under the heading, "Negligent Operation by Lessee—(aa) Rule Holding Lessor Liable."

The second rule and decisions supporting it, on page 785, under the heading "(bb) Rule Denying Liability of Lessor."

Under the first of these headings it is said: "There is a sharp conflict of authority as to whether a lessor of a railroad is liable for injuries to persons or property caused by the wrongful or negligent acts or omissions of the lessee in the operation of the road, so distinguished from the nonperformance of a duty which the lessor's charter or the general law imposes primarily upon the lessor. There is one line of decisions holding that the proper operation of the road so as to avoid injury to third persons is one of the duties imposed by the charter of the proprietary company, and that it cannot escape such duty and the corresponding liability by leasing its road to another, but that the lessor is liable to any person who may be injured by the negligence or wrongful act of the lessee in operating the leased road, unless the charter or statute authorizing the lease exempts the lessor from such liability. The theory of these cases is not that the lessee is to be regarded as the agent or servant of the lessor, but that public policy forbids a railroad company thus to divest itself of its legal responsibility without legislative authority."

Under the second heading it is said:

"Opposed to the rule just stated is a line of cases holding that legislative authority to lease a railroad implies an exemption of the lessor from liability for the acts of its lessee, and that when a company had leased its road, and the lessee is in exclusive possession and control under the lease, no liability attaches to the lessor for any negligent or wrongful conduct of the lessee or its servants whereby third persons are injured."

We have said that the act of incorporation is not in the record, but the whole course taken in the case justifies us in assuming that it is a street railroad company created legally by notarial act for the purpose of constructing and operating a railroad for the transportation of freight and passengers for the public benefit from Gretna, in the parish of Jefferson, to that portion of the city of New Orleans, parish of Orleans, lying on the right bank of the Mississippi river, known as "Algiers."

When the incorporators of that corporation availed themselves of the general law to create that corporation, they acquired for the corporation so created certain legal rights and privileges. They also bound the corporation to the performance of certain acts, and subjected it and its property to certain duties and obligations in behalf of the general public. The corporation so created became bound to an acquisition of a right of way, and the construction thereon over it of a roadbed and tracks, and the operation of cars upon the same, under such conditions as to properly secure the safety of the general public. It became subjected as a quasi public corporation to just and proper legal control and regulation. These were primary obligations on its part, resulting directly ipso facto from its incorporation; and from those obligations towards the public it could not free itself purely at its own will by contracts made with third parties. It might be true that, so long as the corporation remained entirely inactive, it could not be forced into the active performance of these duties by way of mandamus, and that the remedy for nonuser would be by way of forfeiture through the state authorities; but when it took action under its act of incorporation—acquired a right of way, constructed a roadbed and track upon it, and placed the railroad into active operation—it placed itself in a position where it could no longer deal with matters as it might itself think proper, in disregard of the primary obligations which it had come under at and by its creation and in favor of the general public. The various acts of acquisition of property and secondary franchises by the corporation, in necessary aid of the pur-

poses and objects of its creation, impressed·upon the rights and property and secondary franchises so acquired, in favor of the general public, certain rights which it was not free to of itself set aside or disregard. The corporation, through these acquisitions,· became owners of the property; but by the very tenure of the character of this ownership the public, as well as itself, acquired an interest therein. Its ownership was not in one sense an absolute ownership, giving the corporation an unrestricted power of use and disposition, but an imperfect ownership, where the power of use and disposition were held in check and controlled by ·the rights of the general public and the obligations of the corporation.

The right of a corporation to acquire property in aid of the objects of the incorporation is not a criterion of the right of the corporation to use and dispose of it. Where the rights of property are successively acquired in aid of the objects of the corporation, they become fused, consolidated, or merged into an entirety to carry out the public purposes for which they were acquired, and the corporation is not permitted thereafter at its own mere volition to separate them and to divert them from those purposes.

Defendant's argument that, because the law allows the property and franchises of a corporation to be mortgaged, and to be sold in foreclosure of the mortgage, it must be taken to have authorized the leasing of the same by the corporation, as the power to mortgage is much the broader and more extensive power of the two, and the maxim that the less is included in the greater applies, is not well founded. The two powers are not in the same line, but are distinct from each other, and it is error to reason from that standpoint. Besides, the precise circumstances under which the property and franchises are authorized to be mortgaged are fixed, and there existed no such condition of things in this case as would have authorized a mortgage, still less a lease.

Defendant urges that the rights which it acquired by transfer from the syndicates were by their terms and on their face assignable, and in leasing the road they simply exercised a right granted in their act of purchase of the rights. It is true that, in so far as the city of New Orleans and the police jury of the parish of Jefferson were concerned, they each agreed that the rights and privileges which they consented to in favor of the original grantees could and should pass to their assigns and successors. Possibly the city of New Orleans and the parish of Jefferson might be held to that consent, but we are not dealing now with what both or either of those corporations would have the right to object to in the premises. Again, the consent of the city and the parish of Jefferson that the grant of a right of way for a railroad through the streets of Algiers should inure to the benefit of the assignees or successors of the original grantee contemplated that all of the rights and franchises of the road should pass as an entirety, and in the interests of the public, to those assigns or successors. They agreed to the transmissibility of their consent to them, but not to a divisibility of the franchises. The franchises, rights, and obligations of the Algiers & Gretna Railroad Company as a quasi public railroad were not created by the action of the police jury of the parish of Jefferson. Neither the city of New Orleans nor the police jury of Jefferson could alter rights and obligations which sprang from and were fixed by the lawmakers. The effect of the doctrine contended for by the defendant would be to permit six persons, created a corporation with special rights and privileges, but subjected to special duties and obligations to the public, after acquiring property and placing itself in position to carry out its functions, itself to free the corporation and its property from all liability to the public, and abandon the performance of any of its duties, while owning its franchises and property, by the simple process of making a lease to third parties by a contract which would confer upon the corporation rights against its lessee which would prime any to be acquired by third parties for torts committed by the lessee through the faulty and negligent operation of the road. No such result could have been intended by the Legislature. Rights transmissible or assignable quoad one of the parties to a contract are not necessarily so as to the other.

It is a general rule that when a person, whether natural or artificial, has come under obligations to a third person, he cannot

free himself from the same by contract by delegating to another the performance of these obligations, and changing debtors. The present action is not one by which a party holding contractual relations with a lessee seeks to extend the obligations of his contract beyond the person with whom he has contracted over to the lessor, but one ex delicto brought by a third party who, prior to the injuries received complained of, was a stranger to the lessee.

In the case of McConnell v. Lemley, 48 La. Ann. 1438, 20 South. 887, 34 L. R. A. 609, 55 Am. St. Rep. 319, cited by defendant, there was no corporation involved. The issue was whether a private individual, owning a building which he had leased, could be held responsible for damages caused by the acts of the lessee. The owner of the building is liable to the public under certain circumstances, and when so liable he is not released from liability by reason simply of the property being (at the time that damage complained of was received) under lease. In that case the court was of opinion that the damages received were not due to a violation of the lessor's primary obligation. Had they been, a different result would have been reached. A private individual's obligation to the public is much more restricted than is that of a public railroad corporation. Goodwin v. Bodcaw Lumber Co. presented questions different from those raised here. That company was not a public railroad corporation, but a lumber company owning a logging track road used only in connection with its own business. It did not lease, but sold outright, a part of its property which it did not care any longer to retain the ownership of. Some of the stockholders were inclined to convert the private railroad into a public one by the procuring of public railroad franchises; others were not inclined to do so. The result was that the road in question, being the private property of the corporation, was sold to certain of the stockholders as individuals, who thereupon organized as a public railroad corporation, and were operating it as such when the accident complained of occurred.

We are of the opinion that the judgment appealed from is erroneous, and for the reasons herein assigned it is hereby ordered, adjudged, and decreed that said judgment be, and the same is, hereby annulled, avoided, and reversed, and that the cause be reinstated on the docket of the civil district court for the parish of Orleans, and this cause be remanded to that court for further proceedings according to law.