Lawrence FERRAN, Appellant,

v.

ILLINOIS CENTRAL RAILROAD COM-
PANY and Falstaff Brewing Corpo-
ration, Appellees.

No. 18677.

United States Court of Appeals
Fifth Circuit.

Aug. 16, 1961.

Rehearing Denied Sept. 22, 1961.

C. Cyril Broussard, New Orleans, La., for appellant.

H. Martin Hunley, Jr., Lemle & Kelleher, New Orleans, La., for Illinois Central R. Co. J. H. Wright, Gen. Counsel, John W. Freels, Gen. Sol., Chicago, Ill., of counsel.

Stanley E. Leob, New Orleans, La., for Falstaff Brewing Co.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Ferran brought this action against appellees Illinois Central Railroad Company and Falstaff Brewing Corporation claiming that, on September 19, 1956, he was injured by their joint and concurrent negligence. The trial court held that the affidavits, depositions and admissions before it on the motions for summary judgment filed by appellees presented no issue as to any material fact, and granted the appellees' separate motions for summary judgment. This appeal calls in question those actions by the trial court. We think that the court below correctly decided the questions raised by the pleadings and that its action with

respect to each appellee should be affirmed.

Appellant first challenges the summary judgment granted the Railroad Company. This motion was based upon two affidavits and the depositions of five witnesses, including that of appellant Ferran. Certain requests for admissions and responses thereto were also placed before the court hearing the motion. The relevant facts placed before the trial court, as disclosed by the record and exhibits and arguments of counsel, are these:

Appellant Ferran was employed as a carpenter by Falstaff. While engaged about his duties he walked between two boxcars which were at rest upon a spur track installed and utilized exclusively to serve the Brewery's shipping needs. The cars had been spotted by the Railroad before the beginning of Falstaff's business day. There was a space of about three feet between the end car, which had been loaded by Falstaff employees, and the other two, which were empty and were coupled together. Appellant passed through this space en route to the water fountain and the toilet inside the ware-house. In a short time he returned towards his work and attempted to pass back through the same space between the parked cars. In the interim, several employees of Falstaff, on the opposite side of the cars, had hitched a cable to the cars and were in the process, by the use of a caterpillar tractor, of moving the two empty cars across the space so as to couple them with the loaded car and move the cut of three cars a few feet to a point where the door of the first empty car would be opposite the door of the warehouse, through which cases of beer were to be moved into the car and loaded for shipment. All of the men engaged in the movement were employed by and engaged in work for Falstaff, and all of the equipment used was its property. As appellant walked between the cars, the movement was begun and resulted in his being caught between the two cars and severely injured.

These cars had been spotted by the railroad employees in exact fulfillment of the orders received by it from Falstaff, and no employee of the Railroad was present at the time the casualty occurred or for several hours prior thereto. The entire procedure was in keeping with what was customarily done in connection with the placing of cars on the Falstaff spur track and their movement by Falstaff employees to a convenient spot for loading individual cars. The Railroad had no control over or connection with the movement which was taking place at the time of appellant's injuries.

A demurrage tariff was placed in evidence which entitled Falstaff to call for switching service by the Railroad to place the cars at the exact spots necessary for loading. The use of this service was an expensive one to Falstaff, and was attended by considerable delay, and Falstaff had for many years accomplished the slight movement of the cars through its own employees and its own equipment. This was permitted by the demurrage tariff.

When the court below first heard the Railroad's motion for summary judgment, it was denied. At a later date, the district court *ex proprio motu* granted the Railroad's motion, giving the following reasons:

"There is no dispute about the facts in this case. Plaintiff, an employee of the Falstaff Brewing Company, was injured when other employees of that company were moving a cut of the railroad's box cars on premises of the brewery with a tractor. No employees of the railroad were on the premises at the time.

"The public policy of Louisiana holds a railroad responsible for negligence in the permitted use of its rolling stock by others. This principle derives from the quasi-public functions which railroads perform under government authorization. Muntz v. Algiers & G. Ry. Co., 111 La. 423, 35 So. 624, 64 L.R.A. 222. But this obligation does not run to employees of the permitted user. Travis v. Kansas City, S. & G. Ry. Co., 119 La. 489, 44 So. 274, 10 L.R.A.,N.S., 1189; Williams v. Kan-

sas City S. & G. Ry. Co., 120 La. 870, 45 So. 924. While it is true that in the Travis and Williams cases the plaintiff was employed in the operation of a railroad by the permitted user, whereas plaintiff here was not, on reconsideration, this factual difference would not require the application of the principle of Muntz over Travis."

In his Specification of Errors and argument, appellant devotes most of his efforts to an attempt to demonstrate that the trial court committed error in holding that the facts of this case are ruled by the Travis and Williams cases rather than by the Muntz case. We do not agree.

■■ We start consideration of this question by according considerable weight to the decision of the trial judge as to the local law of his own state, in which he has had long experience. Sudderth v. National Lead Co., 5 Cir., 1959, 272 F.2d 259, 263, and the Supreme Court cases listed in Note 11. In addition, critical examination of the three cases listed by the court in giving reasons for its action convinces us that it could hardly have reached any other conclusion. The three cases were all decided within a six year period and all more than a half century ago. The district court correctly stated that the Supreme Court of Louisiana had, in Muntz, held the railroad responsible for negligence in the permitted use of its rolling stock by others, as the result of which a twelve year old child was killed.

But the Louisiana Supreme Court announced a few years later that the rule of the Muntz case applied only "in favor of the public; that is to say, of carrying freight and passengers safely and of operating with due care to the safety of the public generally." The court went on to hold that the lessor company was not liable to an employee of the lessee

company for breach of duty arising out of the relationship of master and servant existing between the lessee and its employees, Travis v. Kansas City, S. & G. Co., 1907, 119 La. 489, 44 So. 274, 10 L.R. A.,N.S., 1189. The same rule was repeated a year later in Williams v. Kansas City, S. & G. Ry. Co., 1908, 120 La. 870, 45 So. 924, 925. Mrs. Williams' husband was an employee of the Kansas City Southern Railroad, but the train was being run on the tracks of the Kansas City, Shreveport & Gulf Railway, a separate corporation. The Kansas City Southern also operated a third railroad in Texas and it, with the two already mentioned, made up a continuous line of railroad from Kansas City to the Gulf. The Kansas City Southern also owned all of the stocks and bonds of the K.C.S. & G. Company. The Supreme Court of Louisiana ordered the suit against K.C.S. & G. dismissed despite the intimate and involved relationship between it and the Kansas City Southern for which Williams worked. Its decision was based upon Travis, supra, and affirmed the principle that the owner of the roadbed of a common carrier was not liable to the employees of those engaged in the movement of trains under lease or other arrangements with the owner.

It is clear that, under Travis and Williams, the Railroad here could not be held to any vicarious liability for the actions of Falstaff's employees in following the almost universal practice of shifting the Railroad's cars about to suit Falstaff's needs and without any participation at all on the part of the Railroad. There is no difference in principle between the relationship of Falstaff's employees, whose actions caused appellant's injuries, and the relationships involved in the Travis and Williams cases.[1]

In the complaint and in the argument before us (but not in the Specification of

---

1. The written contract existing between the Railroad and Falstaff here covered a spur track entirely on the property of Falstaff and running alongside its warehouses and was used exclusively for the spotting of cars by the Railroad to fa-

cilitate the carrying on of Falstaff's business as a shipper of its product over the Railroad's lines. Falstaff's plant was located on both sides of Perdido Street in New Orleans. Under the terms of the contract Falstaff agreed to provide the

Errors), appellant relies upon the borrowed servant doctrine enforced in Louisiana as making the Railroad liable for the actions of Falstaff's employees here. It is plain that, under the decisions of the Louisiana Courts and this Court, the doctrine has no application to the undisputed facts presented by this record.[2]

Appellant claims that if the Railroad is not the party responsible for the appellant's injuries, "then the Brewery, while moving the box cars, 'was acting as a common carrier by Railroad.'" The contention is based on LSA–Revised Statute 23:1037.[3] By this argument appellant seeks to take himself out from under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021, 1032, which provides:

"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations."

Payments prescribed by the Compensation Act had been regularly made by Falstaff's insurance carrier and accepted by appellant. We think that the contention is entirely devoid of merit and that the citation of any authorities is not necessary.

It appearing that the trial court did not commit any reversible error, its judgment is

Affirmed.

---

ground needed for the construction of the spur track both on its own premises and as it crossed Perdido Street. The track of the Railroad remained its exclusive property, with the right of removal upon thirty days' notice. The ground covered by the tracks upon the premises of Falstaff was dedicated to the exclusive use of the Railroad, except as such use might be inconsistent with the proper handling of the business of Falstaff so that another railroad, even with Falstaff's permission, was prevented from using the private spur track. The space between the rails and adjoining the track was used at will by its owner, Falstaff, and the Railroad's use of the ground and the track was confined to its delivery to and removal from the Falstaff premises of boxcars utilized by Falstaff in loading and shipping its beer. The legal relationship thus existing between the Railroad and Falstaff was identical in principle with the relationships dealt with in the Travis and Williams cases, and those cases control the decision of this one on this point. To this same effect is the decision of this Court in Kansas City Southern Ry. Co. v. Nectaux, 1928, 26 F.2d 317, certiorari denied 278 U.S. 621, 49 S.Ct. 24, 73 L.Ed. 542.

And see also Williard v. Spartanburg, U. & C. R. Co. et al., C.C.S.Car., 1903, 124 F. 796.

2. Appellant relies on the cases of Spanja v. Thibodaux Boiler Works, La.App.1941, 2 So.2d 668; Benoit v. Hunt Tool Co., 1951, 219 La. 380, 53 So.2d 137; and Dixie Machine, Welding & Metal Works v. Boulet Transportation Co., La.App. 1949, 38 So.2d 546. The cases do not support appellant's contention.

On the other hand, the cases cited by the appellee Railroad Company clearly sustain the holding of the court below and appellee's position here: B. & G. Crane Service v. Thomas W. Hooley & Sons, 1955, 227 La. 677, 80 So.2d 369; Miller v. B. Lewis Contractors, La.App. 1958, 103 So.2d 592; and cf. Chicago R. I. & P. Railroad Co. v. Bond, 1916, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735; and Hughes v. Deckard, 5 Cir., 1959, 267 F.2d 697.

3. "This Chapter shall not apply to any employer *acting as a common* carrier while engaged in interstate or foreign commerce by *railroad*, where the employee of such common carrier was injured or killed while so employed; * * *" [Emphasis added.]