BREAUX, C. J.
The evidence shows that L. Frederick Johnson, Jr., while riding on á log train operated by the Ozone Lumber Company, fell from his seat to the track, and died from his injuries within an hour afterward.
According to a written agreement between the two companies (the Louisiana Railway & Navigation Company and the Ozone Lumber Company), the hauling of the Ozone Lumber Company was to be limited to logs; all other freight and passengers were excluded.
The hauling was done on skeleton cars connected by wooden poles, not in the least inviting to passengers.
Without its being known to the management, without pay, of course, the workmen would sometimes invite persons to ride the short distance over which the road ran.
The deceased was 21 years of age, and not married. He left his father and mother, who are plaintiffs, and sue to recover $30,000 damages for the loss of .their son, the mental worry, the sorrow, deprivation of support that he might have provided for them.
Plaintiff, in substance, charges in the petition that, through the gross negligence of the railway company, the young man was thrown from his seat by the jerk caused by the sudden stop of the car.
The defense is, in the first place, that the train on which the accident happened, which resulted in the death of plaintiffs’ son, was not owned nor operated by the defendant, but by the Ozone Lumber Company, a private corporation, on its own account.
The Ozone Company furnished its own log cars and engine and all that was necessary to run the train, and it was in charge of its own crew and subject to its own management.
The conductor was an employs of the defendant railway company, and under the terms and conditions of the contract between the defendant and the Ozone Company the train was to be operated under the rules and regulations of the defendant company.
The lumber company paid one dollar and a half for loaded cars.
According to the contract between defendant and the Ozone Company, the latter was to hold the defendant harmless as to all claims for personal injuries. In case of per *335 sonal injury, the defendant was to reserve the right, if it chose, of compromising claims.
All agree that the stop of the train was sudden, and that there was quite a jerk felt all along the train.
There is testimony to prove that the crew of the skeleton car were not all entirely sober. This was controverted, and there is evidence to the contrary.
It is charged by plaintiff that some of them were incompetent. The train crew had the average experience of each employs at the work in which they were engaged.
Just previous to the accident, it happened that there was a small dog running in front of the train. As the train was- approaching fast, it excited the attention of the crew.’ The dog was dangerously near, and they began to shout and halloo in such a way as to attract the attention of persons on the road.
The little dog jumped off the track.
During the confusion, a toggle chain slipped down on the side of the running car, and was hanging down on the side, dangling along dangerously near to the railroad car track.
Just then an emergency signal was given, which attracted the attention of the engineer.
The engine was stopped suddenly.
The young man was sitting down at the end on the front of one of the rear cars of the train.
He fell over, and was dragged about 30 feet.
Plaintiff charges: As the Ozone Company, according to the terms of the contract before referred to, had bound itself to pay for personal injury, that no attention was given to the management of the train; that defendant’s chief object was to collect the $1.50 per car load, and that its management gave itself no concern further than to collect the freight.
[1] The first proposition is:
Can a lessor be held liable in damages for personal injury caused by the lessee under the facts disclosed by the evidence?
We are of opinion that it cannot be held for damages.
The contract of lease between the defendant and the Ozone Lumber Company expressly provided that the liability for personal injury would be entirely oh the lessee road.
The ears were owned by the lessee, and everything connected with the train, except the track.
The crew was paid by the lessee.
The question of the lessee’s liability has been frequently discussed in other jurisdictions.
The decisions are not similar as to facts. In the case here, the facts' are with defendant.
One of these decisions is cited with much confidence by plaintiffs. Railway v. Brown, 17 Wall. 450, 21 L. Ed. 675.
It is unquestionably true, as decided by the court in the cited case, that the railroad company cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the state by surrender of its road into the hands of the lessee.
The defendant, in the case before us for decision, had not surrendered its road to the lessee.
It had, for a consideration, allowed the use of its road for a particular purpose, under guarded stipulations against claims for personal injury.
The trackage in the case before us for decision had been allowed for a particular purpose, which in no way included the carrying of passengers or the transportation of freight.
In this respect, the difference is marked between the two decisions — the one cited, and the one here.
*337 There was a lease, and, in accordance with its stipulations, the leasing log train company retained full right of superintendence and control.
Plaintiffs’ insistence is that:
“A railroad company is liable for injuries to persons caused by the wrongful and negligent operation of the cars upon the road, whether operated by itself or any other corporation to which it has leased it [citing the Muntz Case, 111 La. 423, 35 South. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495; the Hamilton Case, 117 La. 243, 41 South. 560, 6 L. R. A. (N. S.) 787; and the Hollins Case, 119 La. 418, 44 South. 159].”
These decisions are far from being as pertinent as plaintiff contends.
These roads had leased the use of their tracks for purposes that were different. The terms and conditions of the leases were not the same. There had been a transfer of rights that invested the lessee with an authority far above and beyond any of the rights transferred in the present ease.
The lessee in the case here for decision had the use of the road for a very limited and special purpose; that was to haul logs, and none other. The scope of its authority as a lessee was extremely limited; it related exclusively to the hauling of logs for a short distance.
The facts do not afford ground for the proposition of plaintiff that this was a lessee road, having authority to use the right of way at its will and pleasure.
In answer to the proposition that, the defendant having cited the lessee, the Ozone Lumber Company, was an implied admission of some responsibility in the latter, now be-before the court, and which could be made to answer for the liability, pretermitting the question whether an asserted warrantor can be condemned on this action, we are unable to adopt that view, for we are not of opinion that the defendant or the asserted warrantor is liable.
The presence of the young man who met his death on the ears was not prudent, although he had been in a general way invited by the pilot on the train (who, by the way, is referred to as a pilot by defendant to intimate, doubtless, that his position and responsibility can scarcely be .thought of in the same connection with the very important duty and responsibility of a conductor of a passenger or freight train).
The text of the cited eases does not indicate a situation as strong for plaintiff.
[2] The young man, in so far as relates to the chief management of the two roads, was riding on two logs of the skeleton train entirely in "invitum.
There is very positive testimony in the record that the young man was told not to thus expose himself.
[3] If he had not been warned, the log-hauling outfit, from its uninviting appearance, as represented in a photograph before üs, was a warning to all persons not to put themselves as passengers on the train. One in riding on these cars assumed a risk.
He was, it is true, entitled'to the protection due as between man and man, but he did not have the right due by a railroad company to its passengers.
[4] The sudden stop and jolt, in answer to an emergency signal, because of the toggle chain, which hung dangerously near on the side of the car, is not one of the acts for which defendant can be held liable.
For, as to this logging concern, one riding on its cars, as we understand the situation, should always have been ready, as far as possible, to protect himself from a fall.
The judgment is therefore affirmed.