STANDARD FORGINGS COMPANY v. HOLMSTROM,
ADMINISTRATOR.

[No. 8,245.  Filed April 9, 1914.  Rehearing denied June 12, 1914.
Transfer denied March 24, 1915.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Instructions.*—The statement in an instruction, in an action for the death of a servant, that "a servant does not assume the risk which arises from the negligence of his employer, and he has a right to believe that the master has performed his whole duty as required by the law", when standing alone, is open to the objection that it takes from the jury the consideration of dangers resulting from the master's negligence and of which the servant had knowledge; but when considered with the preceding portion of the instruction to the effect that the plaintiff must prove that decedent did not know of the dangers and risks to which he was subjected by the negligence of the master as charged in the complaint, and that a servant assumes the ordinary and usual risks of his employment which are such as are obvious to a person in the exercise of reasonable care, as well as with the closing statement that if the jury found that decedent knew or by the exercise of reasonable care could have known of the defects, if any, and such defects caused the injury which resulted in his death, the plaintiff could not recover, the quoted statement neither rendered the instruction contradictory nor prejudicial to defendant.  pp. 309, 310.

2. MASTER AND SERVANT.—*Injuries to Servant.—Duty of Master.— Performance.—Assumption of Risk.*—Generally a servant may rely upon the master's performance of his legal duty to provide a safe working place, safe machinery, appliances, etc., and, though a servant ordinarily assumes all dangers of which he has knowledge actual or constructive, the dangers resulting from the master's negligence are not regarded as among those ordinarily incident to the employment, and where the servant is held to have assumed the risk of such dangers, it is by reason of his having entered the employment with knowledge of their existence, or having remained after obtaining such knowledge, and not upon the ground that such dangers were ordinarily incident to the employment.  p. 310.

3. DEATH.—*Action for Wrongful Death.—Instructions.*—In an action for a wrongful death, an instruction that it can not be presumed that the next of kin have suffered pecuniary loss, but that such loss, if any, must be proven, and that unless the next of kin for whose use the action was brought were in the habit of claiming and receiving pecuniary assistance from the dece-

Standard Forgings Co. v. Holmstrom—58 Ind. App. 306.

dent, the verdict should be for nominal damages only, but if it was found that the next of kin were in the habit of claiming and receiving pecuniary aid from decedent, the verdict should be for the actual money loss that they sustained by reason of the death, etc., was erroneous in that it in effect told the jury that if it found that the next of kin had been in the habit of claiming and receiving pecuniary aid from decedent, that fact alone would require a verdict for plaintiff for substantial rather than nominal damages.  p. 311.

4.  DEATH.—*Action for Wrongful Death.—Substantial Damages.— Foundation.*—In an action for the wrongful death of a minor, brought by an administrator in behalf of certain next of kin, it is proper for the plaintiff to show as a foundation for the recovery of substantial damages, that decedent during his life had given assistance to such next of kin by way of money, services or other material benefits; but, before such damages may be recovered, plaintiff must also show a reasonable probability that such assistance in whole or in part would have continued but for such death.  p. 312.

5.  APPEAL.—*Review.—Refusal of Instructions.*—Instructions based on the laws of a foreign country were properly refused as inapplicable to the issues and evidence, where such laws were neither pleaded nor proven.  p. 312.

6.  STATUTES.—*Foreign Statutes.—Pleading and Proof.*—Foreign statutory laws, where relied on as foundation of the cause of action or defense, must be pleaded and proven.  p. 312.

7.  DEATH.—*Wrongful Death of Minor.—Action by Administrator. —Evidence.*—In an administrator's action for a wrongful death, a verdict for plaintiff can not be disturbed on the ground that the evidence showed that decedent was an unemancipated infant, and that therefore the action should have been brought by decedent's widowed mother, although there was some evidence susceptible to an inference that decedent was under twenty-one years of age, where it was of such character as not to be conclusive either upon the question of age or emancipation, and especially in view of the fact that defendant had not tendered any issue presenting the question of infancy or the right of plaintiff to maintain the action.  p. 313.

8.  EVIDENCE.—*Presumption.—Infancy.*—Infancy can not be presumed, but must be pleaded or shown by evidence.  p. 315.

9.  PARTIES.—*Real Party in Interest.—Pleading.—Appeal.*—A defense that plaintiff is not the real party in interest, and hence has no right to sue, must be specially pleaded in bar, and can not be raised for the first time on appeal.  p. 315.

10.  APPEAL.—*Questions Reviewable.—Right to Maintain Action.*— Where there was nothing in the complaint by an administrator

for the wrongful death of his decedent to indicate the minority of decedent, and no question was raised at the trial, either by answer or otherwise, as to the administrator's right to bring the action, the objection that he was not the proper party comes too late on appeal.  p. 315.

11.  DEATH.—*Measure of Damages*.— The measure of damages in an action for wrongful death is the pecuniary loss resulting from the death to the next of kin for whose benefit the action is brought, not, however to exceed the limit to recovery fixed by statute, and does not permit of any allowance by way of *solatium* for grief and wounded feelings, or as compensation for the mere loss of society or companionship.  p. 316.

12.  DEATH.—*Damages.—"Pecuniary Loss"*.—The word "pecuniary" as used in the rule limiting the damages recoverable for a wrongful death to the pecuniary loss resulting therefrom is a relative term, and, the term "pecuniary loss", as applied to the loss of a parent from the death of an adult or emancipated child, is the present worth of the amount which it is reasonably probable the decedent would have contributed to the support of the parent during the latter's expectancy of life in proportion to the amount he was contributing at the time of his death, not exceeding his expectancy of life.  p. 316.

From Lake Superior Court; *Virgil S. Reiter*, Judge.

Action by Oscar Holmstrom, as administrator of the estate of Gotfried Wickstrom, deceased, against the Standard Forgings Company.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*Bomberger, Sawyer & Curtis*, for appellant.
*D. J. Moran* and *C. E. Greenwald*, for appellee.

HOTTEL, J.—Gotfried Wickstrom, deceased, while in the employ of appellant, received injuries which resulted in his death.  Appellee administrator brought suit against appellant charging it with negligently causing his death.  From a judgment therein in appellee's favor for $4,000 this appeal is prosecuted.

The overruling of the motion for a new trial is the only error assigned and relied on for reversal.

The facts shown by the complaint and the evidence necessary to an understanding of the questions presented by the

appeal are in substance as follows: Decedent was employed by appellant to help unload steel billets from a car on the siding near its plant. These billets were elevated out of the car by means of a crane. Decedent's work was to help place the billets in piles so that they could be elevated by such crane. Each of such billets would weigh from 500 to 800 pounds, and a crane load would be from 12,000 to 15,000 pounds. After such billets were piled, a chain tackle attached to the crane was placed under either end of the pile and hooked to the rim of the crane, thus making a sling for the load. Decedent and other workmen remained in the car to guide the load while it was being hoisted and to be ready when it left to continue their work in stacking and arranging other piles to be unloaded by the crane. On January 18, 1910, while decedent was engaged in the performance of his duties under such employment he was severely injured, from which injuries he died six days later. His injuries were caused by the breaking of the chain tackle letting a load of billets fall against and upon decedent. Several acts of negligence are charged in the complaint, but those relating to the questions here involved are, the furnishing of a defective chain unsuited for the character of the work and failure to inspect such chain properly.

The action of the court in giving, and the refusing to give certain instructions is first discussed by appellant. Instruction No. 4 given at the request of appellee is objected

1. to on the ground that it is contradictory in its statements, and told the jury that (we quote) "a servant does not assume the risk which arises from the negligence of his employer, and he has a right to believe that the master has performed his whole duty as required by law." It is insisted that this instruction took from the jury the consideration of all dangers resulting from the negligence of the master, including those of which the servant had knowledge, either actual or constructive. That part of the instruction just quoted separated from the remainder thereof and stand-

ing alone might be open to appellant's criticism; but, immediately preceding the language quoted, the jury was told: "It is also incumbent on the plaintiff to prove that his decedent Gotfried Wickstrom *did not know of the dangers and risks to which he was subjected by the negligent act and omissions of the master* as charged in plaintiff's complaint, and the burden is on the plaintiff to prove these matters by a fair preponderance of the evidence. This rule is called assumption of risk, and it is the law that a servant assumes the ordinary and usual risks of his employment, and ordinary and usual risks are those which are obvious to a person in the exercise of reasonable care." The meaning of the language first quoted, which is objected to by appellant, becomes obvious when considered in connection with that last quoted.

Generally speaking, the servant has a right to assume that the master has performed the duty which the law imposes on him in the matter of using reasonable care to furnish him a safe place to work, safe machinery, appliances, etc.; and, the dangers, ordinarily incident to the work of a servant, are not generally regarded as including those resulting from the master's negligence; because the fact that they are usually and ordinarily incident to such employment of itself carries with it the idea that such dangers are those which ordinary prudence can not provide against, and hence are not the result of negligence. Such dangers are impliedly assumed by the employe's contract of employment and, as against them, the employe, where of full age and in the enjoyment of all his faculties, would not be heard to say that he did not know of their existence; and, while it is true, generally speaking, that the servant also assumes those dangers of which he has knowledge, actual or constructive, even though they be such as result from the master's negligence, yet, this is so because of his taking employment with such knowledge, or because of his remaining in the employ of his master after he has such

knowledge, and not because his contract of employment necessarily includes such dangers. On this phase of assumption of risk, if the part of the instruction already quoted needed anything further to make certain that the burden was on plaintiff to prove that his decedent did not know of the risk which caused his death, it was supplied by the closing paragraph of the instruction which is as follows: ''If you find from the evidence that the plaintiff's decedent knew or by the exercise of reasonable care could have known of the defects, if any, and such defects caused the injury which resulted in decedent's death then he cannot recover.'' The instruction when read in its entirety, as the rules of construction require (*Nave* v. *Flack* [1883], 90 Ind. 205, 46 Am. Rep. 205; *Joseph E. Lay Co.* v. *Mendenhall* [1913], 54 Ind. App. 342, 102 N. E. 974), shows that it was intended to cover and does cover both elements or phases of assumption of risk just indicated, and was neither contradictory nor prejudicial to appellant. Indeed, the instruction was more favorable to appellant than the law warrants, because it prevented recovery by appellee, if decedent simply knew or might have known of the defects, without reference to his knowledge or appreciation of the dangers that might result from such defects.

Complaint is also made of instruction No. 12. The part objected to is as follows: ''You can not presume that the next of kin have suffered pecuniary loss because of the death, but the pecuniary loss, if any has been sustained, must be proven; and unless the next of kin for whose use this suit is brought, were in the habit of claiming and receiving pecuniary assistance of the deceased, your verdict should only be for a nominal sum; but if you find from the evidence that said next of kin were in the habit of claiming and receiving pecuniary aid from the deceased, then your verdict should be for the actual money loss that they sustained by reason of his death, provided you find the issues for the plaintiff.'' The effect of the objection to this in-

struction is that it told the jury that if it found that the next of kin had been in the habit of claiming and receiving pecuniary aid from the decedent that the finding of this fact alone would require it to return a verdict in appellee's favor for substantial rather than nominal damages. We are of the opinion that the instruction is subject to the infirmity indicated, as well as others that might be pointed out.

4. This action being for the death of a child brought by the administrator in behalf of certain next of kin, it was proper for appellee to show as a foundation for recovery, not necessarily that such next of kin *"had claimed"*, but that the decedent, during his life, had given them assistance by way of money, services or other material benefits, and, a finding by the jury that such facts had been proven would not authorize a recovery of substantial damages, unless it further found from the evidence a reasonable probability that such assistance in whole or in part would have continued but for such death. Tiffany, Death by Wrongful Act (2d ed.) §158. This latter element which was of controlling importance in the matter of determining the amount of recovery was entirely ignored in the instruction and hence rendered its giving erroneous.

It is further insisted by appellant that the court erred in refusing to give certain instructions tendered by it to the effect that the beneficiaries as shown by the evidence

5. in this case are all nonresidents of this State, and are residents of Sweden, and, as such, were not entitled to the benefit of §285 Burns 1914, Acts 1899 p. 405.

6. Said instructions were based on the laws of Sweden relating to recovery of damages for wrongful death, and were properly refused for the reason, if no other, that such laws were neither pleaded nor proven, and hence such instructions were inapplicable to the issues and the evidence. Foreign statutory laws, where they are relied on as the foundation of the cause of action or defense, must be pleaded and proven. *Cincinnati, etc., R. Co.* v. *McMullen* (1889),

117 Ind. 439, 445, 446, 20 N. E. 287, 10 Am. St. 67; *Teutonia Loan, etc., Co.* v. *Turrell* (1898), 19 Ind. App. 469, 471, 49 N. E. 852, 65 Am. St. 419; *Old Wayne Mut. Life Assn.* v. *Flynn* (1903), 31 Ind. App. 473, 475, 68 N. E. 327; *Baltimore, etc., R. Co.* v. *Ryan* (1903), 31 Ind. App. 597, 602, 68 N. E. 923.

The first and second specifications in appellant's motion for a new trial are, respectively, that the verdict is not sustained by sufficient evidence and is contrary to law.

7. Appellant claims that the evidence shows that the decedent was an unemancipated infant, and that, for this reason, his widowed mother had a right at any time to reclaim his services, and hence the right of action, if any, was in the mother and not in the administrator, citing among other cases, those of *Berry* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 484, 28 N. E. 182, and *Couchman* v. *Prather* (1904), 162 Ind. 250, 254, 70 N. E. 240. There seems to be some confusion in the decided cases on the question whether an action for the death of a minor child caused by the negligence of another should, in all cases, be brought by the parent or guardian, under §267 Burns 1914, §266 R. S. 1881, or whether such action, under certain conditions, may be brought by the administrator under §285 Burns 1914, *supra.*

Section 267 Burns 1914, *supra,* provides for the bringing of an action for the injury or death of a *child* by the parent or guardian with no limitation as to the age of the child. In the case of *Pittsburgh, etc., R. Co.* v. *Vining* (1867), 27 Ind. 513, 519, it is said: "The word child, as employed in the 27th section [§267, *supra*], is not to be construed as equivalent to the word minor, but we think is limited in its application to one who occupies the position of a child to a parent, as depending upon him for protection, support and education, and cannot be held to include one who, although a minor, has assumed the relations and responsibility devolving upon the head of a family. Webster says, the word 'is applied to infants from their birth, but that the time when

they cease ordinarily to be so called is not defined by custom.' We think it is intended by the statute that the position occupied by the person should determine the question, rather than the age alone.''

Again in the case of *Mayhew* v. *Burns* (1885), 103 Ind. 328, 333, 2 N. E. 793, it is said: ''During the continuance of the relation of parent and child, the right of action is in the parent entitled to its services. This relation presumptively continues during the minority of the child. *Pennsylvania R. Co.* v. *Adams* [1867], 55 Pa. St. 499; * * * *Pennsylvania R. Co.* v. *Zebe* [1858], 33 Pa. St. 318. *If the relation does not exist, then the action is to be brought by the personal representative, regardless of the age of the person whose death has been caused,* provided there are persons sustaining such relation as that they may be supposed to have sustained pecuniary injury on account of such death.'' (Our italics.)

Appellant's claim that the decedent when killed was an unemancipated infant is, in the main, based on a statement made during the progress of the trial by appellee's attorney in connection with an offer to show the circumstances of the family of decedent. In that connection such attorney made the following statement: ''I say this your honor, of course the evidence would probably show this young man was nearly of age, I think 19 or 20, probably when he was killed.'' There was also some testimony from some of the witnesses which would justify an inference that decedent when killed was under 21 years of age, but we do not regard the evidence either as to age or as to nonemancipation as being of such a conclusive character as to show no cause of action in the administrator, especially if the two cases last quoted from are to be regarded as correctly stating the rule governing such cases. If, however, it should be conceded that the evidence and the law on said question is as appellant contends, we are of the opinion that it is in no position now to insist on a reversal of the case on such ground. Appellant's only

answer to the complaint was a general denial. Infancy is not presumed; it must either be pleaded or given in evidence. *Pitcher* v. *Laycock* (1856), 7 Ind. 398, 402; *Boyd* v. *Fitch* (1880), 71 Ind. 306, 310; *Board, etc.* v. *Anderson* (1878), 63 Ind. 367, 370, 30 Am. Rep. 224; *McSweeney* v. *McMillen* (1884), 96 Ind. 298, 301; *Indianapolis St. R. Co.* v. *Antrobus* (1904), 33 Ind. App. 663, 71 N. E. 971. A defense that plaintiff is not the real party in interest, and hence has no right to sue, must be specially pleaded in bar (*Curtis* v. *Gooding* [1884], 99 Ind. 45, 52 and cases cited; *Mathis* v. *Thomas* [1885], 101 Ind. 119, 122), and can not be raised for the first time in the appellate court. *Bowser* v. *Mattler* (1894), 137 Ind. 649, 654, 35 N. E. 701, 36 N. E. 714. The complaint does not disclose the minority of the decedent, and that it states facts showing a cause of action in the administrator is not questioned in this court. No question appears to have been raised at any time in the trial court by way of answer or otherwise, that appellee was not the proper party to sue. So, if it should be conceded that appellant is correct in its statement that the evidence shows that the decedent was an unemancipated infant, such defense comes too late to be of any avail. *Bowser* v. *Mattler, supra; Felton* v. *Smith* (1882), 84 Ind. 485; *State ex rel.* v. *Ruhlman* (1887), 111 Ind. 17, 11 N. E. 793; *Ziegler* v. *Ziegler* (1906), 39 Ind. App. 21, 78 N. E. 1066; *LePlante* v. *State, ex rel.* (1899), 152 Ind. 80, 52 N. E. 452; *Burch* v. *Whittington* (1825), 1 Blackf. 348. See, also, *Fairfield Shoe Co.* v. *Olds* (1911), 176 Ind. 526, 96 N. E. 592; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Muncie, etc., Traction Co.* v. *Citizens Gas, etc., Co.* (1913), 179 Ind. 322, 100 N. E. 65; *Campbell's Exr.* v. *Lindley* (1862), 18 Ind. 234; *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639, 83 N. E. 246; *Sims* v. *Smith* (1885), 99 Ind. 469, 50 Am. Rep. 99.

It is next insisted that the damages are excessive. There

is no express provision in this State as to the measure of damages, except that limiting the amount of recovery.

11. The measure of damages, however, as fixed by judicial construction is held to be the pecuniary loss resulting from the death to the next of kin for whose benefit the action is brought. Nothing can be allowed by way of *solatium* for the grief and wounded feelings of the beneficiaries, or as compensation for the mere loss of society or companionship which they have suffered. *Jeffersonville R. Co.* v. *Swayne* (1866), 26 Ind. 477; *Commercial Club* v. *Hilliker* (1898), 20 Ind. App. 239, 50 N. E. 578; *Louisville, etc., R. Co.* v. *Rush* (1891), 127 Ind. 545, 26 N. E. 1010; *Ohio, etc., R. Co.* v. *Tindall* (1859), 13 Ind. 366, 74 Am. Dec. 259; *Chicago, etc., R. Co.* v. *Vester* (1911), 47 Ind. App. 141, 93 N. E. 1039.

The word "pecuniary" as used in this connection is a relative term. As was said in his recent work by Tiffany, Death by Wrongful Act (2d ed.) §158: "The con-

12. struction placed upon the word by the courts can only be ascertained by an examination of the various rules which have been evolved for measuring the damages, and which differ, according as the action is brought for the benefit of husband, wife, minor child, or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled."

As applicable to the last mentioned class, where the loss sustained is that of the parent of an adult or emancipated child this same author says: "It is usually held necessary to lay a foundation for recovery for the plaintiff to show that the deceased, during his life, gave assistance to the beneficiaries, by way of money, services, or other material benefits, which, in reasonable probability would have continued but for the death. * * * The distinction taken in the English cases has generally been observed in the United

Standard Forgings Co. *v.* Holmstrom—58 Ind. App. 306.

States; that is, the plaintiff must show that the decedent gave assistance to the parent or that the parent had reasonable expectation of pecuniary benefit from the continued life of the child. The proper measure of damages is the present worth of the amount which it is reasonably probable the deceased would have contributed to the support of the parent during the latter's expectancy of life in proportion to the amount he was contributing at the time of his death, not exceeding his expectancy of life.'' This rule, while probably not always applied with exact mathematical strictness, is we think, substantially followed in this State.

There is some evidence in this case which, under the rule just announced, would probably prevent a reversal of the judgment below on the said ground of excessive damages, but the amount of recovery, when considered in the light of all the evidence, is, to say the least, extremely liberal, and is such as to preclude our saying that it might not have been influenced by the erroneous instruction before considered. It follows that the giving of said instruction constituted harmful error and because of such error, the judgment below is reversed with instructions to the trial court to grant a new trial herein and for such other proceedings as may not be inconsistent with this opinion.

NOTE.—Reported in 104 N. E. 872. As to duty of master to servant, see 75 Am. St. 591. Measure of damages recoverable by parent for death of minor child by wrongful act, see Ann. Cas. 1912 C 58. See, also, under (1) 26 Cyc. 1503, 1491; (2) 26 Cyc. 1182, 1196, 1185, 1186; (3) 13 Cyc. 385; (4) 13 Cyc. 350, 361; (5) 38 Cyc. 1612; (6) 36 Cyc. 1240, 1252; (7) 3 Cyc. 348; 13 Cyc. 387; (8) 22 Cyc. 690; (9) 31 Cyc. 737; 2 Cyc. 686; (10) 2 Cyc. 685; 18 Cyc. 1083; (11) 13 Cyc. 371, 373; (12) 13 Cyc. 367.