No. 3828

Second Circuit

BARNES v. RED RIVER & GULF R. R.

(June 2, 1930. Opinion and Decree.)
(July 5, 1930. Rehearing Refused.)

Hawthorn, Stafford & Pitts, of Alexandria, attorneys for plaintiff, appellee.

Jackson & Smith, of Shreveport, attorneys for defendant, appellant.

DREW, J. The district judge has handed down a well-prepared written opinion in this case, and to a great extent we have adopted it as the opinion of this court.

Plaintiff sued for damages arising out of the death of her husband, John C. Barnes, on June 24, 1929, due to an accident on June 22, 1929, caused by a train of defendant's lessee running into him while he was walking across a trestle over Bayou Boeul on the track of defendant near Lecompte, Rapides parish. Deceased was at the time of the accident employed by defendant as section foreman and was on his way home for the noon dinner. The train that ran into him and caused his death belonged to and was operated by the Gifford-Hill & Company, Inc., over the tracks of defendant with the knowledge and consent of defendant under a contract of lease granting the right and privilege to Gifford-Hill & Company, Inc., to use said track in the operation of its trains to haul gravel from its pit to Lecompte, La.

The right and privilege granted to Gifford-Hill & Company, Inc., under said lease agreement was for the sole and only purpose of hauling gravel over defendant's tracks and was limited to one train a day each way unless special permit was given for other trains. It was required

to operate under orders given by defendant's dispatcher.

On the occasion of the accident, Mr. Barnes was on his way to his home for dinner and was walking the track, it being the shortest and most convenient way for him to reach his house. He had been in the habit of walking the track in going to and from home for several years to the knowledge of his superiors, the roadmaster, and other officials; when he arrived at the trestle, which was more than three hundred feet long, there was no train in sight, and he proceeded to walk across the same; just how far he had gone on the trestle when he was struck no one knows; however, the greater part of the evidence is that he was near the east end, that is, had nearly gotten across the trestle when he was struck; the trestle was very little wider than the train and no chance for him to step to one side and let the train pass; the trestle was very high and over water, which prevented him from jumping off the trestle.

The train had some time previous gone into Lecompte with a load of gravel and was at the time on its way back to the pit with twenty empty cars; it had no regular schedule and there was no way for the deceased to know when it was coming. There was no train in sight when the deceased entered on the trestle, and he proceeded to walk across with his head down, undoubtedly watching his step to prevent falling through the trestle; the train came out of Lecompte headed west, and on reaching the highway, some two hundred or more feet from the trestle, gave its usual signals for highway crossings but did not give any other signals. At the time there were two other trains in the yards at Lecompte, both of which were making the usual noise that goes with operating a train, all of which easily accounts for deceased not giving notice if he heard it to the oncoming train. The engineer, due to a curve in the track, could not see the trestle until he had nearly reached it, but the fireman had a plain view of the trestle and did see it and the deceased, whom he recognized for more than two hundred feet before the train reached the trestle.

Deceased was a man seventy years of age and therefore not very fast in his pace; the train was traveling at a rate of speed of from eight to ten miles an hour, and according to the testimony of trainmen could have been stopped within a distance of eighty or ninety feet. When the fireman saw deceased on the trestle he did not notify the engineer; neither did he ever give any signals for the deceased, his reason being that he thought deceased had sufficient time to reach the east end of the trestle before the train would get there. He testified that the deceased never looked up and was not aware of the presence of the train until it was right on him, and that when the train was nearly onto the deceased, he (the fireman) notified the engineer, who attempted to stop the train but was too close to the deceased to escape striking him. When the deceased saw the train, it was in the act of striking him, and the only thing for him to do in an effort to save his life was to step upon the pilot, which he did, and rode the engine across the trestle, where the train was slowed down and he got off. In hopping on the moving train he was struck in the abdomen and received internal injuries that brought on his death within about sixty hours.

Plaintiff first claimed compensation under the Employers' Liability Act of Louisiana (Act No. 20 of 1914, as amended). Upon defendant answering, alleging that

deceased was engaged in interstate commerce, and that both defendant and Gifford-Hill Company, Inc., and their employees were engaged in interstate commerce just before and at the time of the accident, plaintiff filed a supplemental petition with an alternative plea that in the event the court held the case to come within the interstate commerce rule, she asked for judgment under the Federal Employer's Liability Law in a total sum of $45,476.50, itemizing said claim.

The testimony shows conclusively that the case is one coming under the provisions of the Federal Employers' Liability Act (45 USCA secs. 51-59), and in this court both cousel for plaintiff and counsel for defendant admit that to be the case.

Plaintiff sued, in her alternative plea, as administratrix of her husband's estate, alleging negligence upon the part of Gifford-Hill Company, Inc., and that the defendant, the lessor, is legally responsible for said negligence. She also prays for financial support for an adopted daughter living with her, for whose support a portion of her deceased husband's earnings were used. We will dispose of that matter at this time. There were no children of the marriage of plaintiff and her deceased husband, and no one but plaintiff herself can be considered in estimating the amount of the award. She cannot recover for or on account of the adopted child.

Defendant filed an exception of no cause of action, based upon the reason that the contract between defendant and its lessee Gifford-Hill Company, Inc., is for a limited purpose, that of hauling gravel from its pit to Lecompte, and not a general use of the road, and that holding one person responsible for the acts of another is a well-recognized legal fiction, and that in such cases responsibility must be clearly established, and that the rule of law that the owner of a railroad is responsible for the acts of the lessee is a rule always dependent upon the local law, and that the law of this state does not allow recovery of the lessor for acts of negligence of the lessee where the lessee's right of use of the railroad is limited to a specific purpose, such as hauling of gravel or logs and not allowed to use said railroad for any other purpose.

Counsel for defendant relies upon the case of Johnson v. Louisiana Railway & Navigation Company, 129 La. 332, 56 So. 301, 36 L. R. A. (N. S.) 887. We do not think the case in point. In that case the plaintiff was riding on the train of lessee by invitation of one of the lessee's employees and fell off when the train was suddenly stopped. The lessee was operating under a lease that only authorized it to haul logs and not passengers. The syllabus of the case correctly sets out what the court held.

"1. A railroad company which has leased to a lumber company the right to use its tracks only for logging trains, under the superintendence of the lessee, cannot be held liable for the death of one who was riding on a logging train belonging to the lumber company.

"2. A corporation operating a train for the purpose of carrying logs cannot be held liable for the death of one who accepts an invitation of the crew to ride on the train, especially when it was apparent to him that there was danger in so doing.

"3. It is not negligence for an engineer of a logging train, not intended to carry passengers, to suddenly stop his train on getting an emergency signal.

"4. Where one is warned that the position which he has taken upon a logging train is a very dangerous and insecure one, and he is thrown off by the sudden jolting of the train in coming to an emergency stop, and killed, the owner of the train will not be held responsible."

The case was decided upon the facts of the case, and the court held that the logging company was not negligent.

The general rule of law is that a railroad company is liable for injuries to persons by the wrongful and negligent operation of the cars upon the road, whether operated by itself or by any other corporation, to which it has leased it.

This rule has been adopted by the Supreme Court of this state and is the law governing in all cases arising under the Federal Employers' Liability Act in Louisiana.

In the case of Taylor v. Louisiana & Northwest Railroad Company, 129 La. 113, 55 So. 732, the court said:

"Where a railroad company leased a portion of its track to a lumber company, which subleased to a logging company, a workman injured by collision of a hand car on which he was riding with a train operated by the logging company carrying logs for the lumber company, for which injuries the lessees are liable, is also entitled to recover from the lessor. * * *
"In an action against a railroad company and its lessees for injuries caused by operation of a train by one of the lessees, the judgment should be, not only against the railroad company, but against the railroad company and its lessees in solido."

The court further said, in that case:

"That the lessor railroad company is also liable in case its lessees are found to have been responsible for the injury and to be liable is not seriously contested, and is clear under the doctrine of the Muntz case, 111 La. 423, 35 So. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495."

In the case of Bailey v. Louisiana & Northwest Railroad Company, 129 La. 1029, 57 So. 325, the court said:

"Whether a railroad company shall operate its road by itself or by another is a question for it, within certain limits, to determine; but the determination of that question cannot relieve it of the consequences to others of negligence in such operation."

In the case of Kansas City Railway Co. v. Nectaux (C. C. A.) 26 F. (2d) 317, 319, a Louisiana case, the court said:

"It is settled that a railroad is responsible to a passenger for damages occasioned by the negligence of a licensee using its tracks. Illinois Central R. R. v. Barron, 5 Wall. 90, 18 L. Ed. 591. The decisions are not harmonious in applying this rule to an employee, but in Louisiana an employee of a railroad permitting another to use its tracks jointly may recover from his employer for injuries caused by the negligence of the agents of the licensee, though the rule is different as applied to the employees of the licensee. It is not necessary that the technical relation of lessor and lessee, in the sense that the entire operation of the road is turned over to the lessee, should exist. The rule is the same if there is contemporaneous joint usage of the road. Ingram v. La. & N. W. R. Co., 128 La. 933, 55 So. 580; Taylor v. La. & N. W. R. Co., 129 La. 113, 55 So. 732; Bailey v. La. & N. W. R. Co., 129 La. 1029, 57 So. 325. A rule of local law imposing liability may be enforced in suits under the Federal Employers' Liability Act. North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159."

The lessees in the above-cited cases were limited to the right or privilege of hauling logs over lessors' road, as in this case the lessee was limited to hauling gravel. We think the above decisions are decisive of the question, and that if deceased was killed through the negligence of the lessee, the lessor, defendant herein, is liable. Therefore the exception of no cause of action was properly overruled.

Deceased was not an employee of the lessee, but was an employee of the lessor, and insofar as the lessee is concerned was a stranger, and his relation to the lessee was the same as the relation between the lessee and the public, and it cannot be denied that if a stranger to both companies had been injured by the negli-

gence of the lessee, the lessor would have been liable.

Defendant contends that the accident was caused by the negligence of the deceased in going on the trestle when he could, by going a longer distance, have kept off the trestle, and that when he went on the trestle he assumed the risk attached thereto.

Contributory negligence is not a bar to recovery under the Federal Employers' Liability Act, and it is pleaded in this case only for the purpose of mitigating the amount of damage. Plaintiff, denying negligence on the part of deceased, pleads that if he was negligent, the defendant had the last clear chance to save the life of deceased and therefore is liable.

Deceased was the section foreman, and his work required him to be on the track of said railroad all the time during work hours; it was his duty to repair the tracks and bridges and keep same in good condition; it necessitated his inspecting the track and bridges and trestles, and he would have been within his rights and where he belonged if he had gone on this trestle at any time to make inspection of it or to repair it. His work required him to be on the track constantly, and in going to and from his home, to and from work, the shortest and most convenient route was down the track and across this trestle; he had been using this route for several years, with the knowledge and consent of his superiors, and had walked it with his superiors. It would be foolish to say that one whose work required him to be on the track all day should leave the track and take a circuitous route home for his meals, and that if he did not that he would assume all risk of any injury received by walking on the track. If his work on this particular day had required

him to be a great distance from home and required the use of a hand car, it could not have been said that he was negligent in crossing this bridge or trestle on a hand car in returning to his home for dinner. Due to the nature of his work, we do not think it can be said that he was negligent in attempting to cross the trestle in going to and from his home for meals at a time when no train was in sight and where any train that might come would have had ample time to see him and stop before striking him.

The fireman testified that he saw the deceased more than two hundred feet before the train reached the trestle and that he recognized him; that deceased was walking with his head down and did not take any notice of the train; and that the train could have been stopped within eighty or ninety feet at the speed it was going. He did not tell the engineer that a man was on the trestle, nor did he give any warning or signal to the deceased, but states that he thought deceased had sufficient time to get off the trestle. It was clearly the duty of the fireman to have notified the engineer and to have given signals by blowing the whistle and ringing the bell and, if necessary, to apply the brakes and stop the train. It is convincing that deceased did not know the train was coming until it was too late for him to save himself, while it is equally as convincing that the fireman, who saw the deceased on the trestle, could have had the train stopped when it was within one hundred feet of the bridge and have saved the life of deceased. The last clear chance was with the defendant, and it was the duty of the defendant to have stopped the train.

The court said, in the case of Simmons v. Louisiana Railway & Navigation Company, 149 La. 686, 90 So. 24, 28:

"So much was his attention concentrated on his work that the testimony of every witness who saw him points to the conclusion that he heard no signal from, and was wholly unconscious of the approach of, the train; and that he was so unconscious was apparent. The purpose of such signals as may have been given, therefore, failed, and those by whom they were given knew that they had failed, for the engineer admits that up to the last moment, where, at a distance of 40 or 50 feet his view of the foreman was cut off by the tender, he had observed that his eyes were directed toward the tower, from which the concrete was pouring in a steady stream; and the lookout testifies that up to the moment that his view was cut off, at a distance of 15 feet, he had not looked in the direction of the train. If, then, the purpose of a signal be to attract the attention of, and convey information to, the person to whom it is directed, and if he who gives it sees and knows, or has reason to believe, that it fails of its purpose, and a human life is at stake, it seems plain that something else should be done, or attempted; and, in this instance, there appears to have been at least two things that might have been done, to-wit: The whistle might have been blown, and the air brakes might have been applied, as at 40 or 50 feet the foreman, still oblivious to the approach of the train, was cut off from the view of the engineer. But nothing was done, except to run over the foreman and kill him, and, though it was daylight and he was in plain view of those members of the train crew, and it is said by them that the train was moving at only 2½ or 3 miles an hour, not one of them saw him killed, and only one of them (the engineer) ventured to make the guess that he had committed suicide by walking into the train, or that he might have fallen off the platform, 4 feet outside of the west rail, and have been run over on the track between the rails. Our conclusions are that the negligence of the engineer and crew of the train was the proximate cause of the accident, that the decedent was not at fault, and that he did not assume the risk of that negligence. St. Louis, etc., R. Co. v. Jackson. 78 Ark. 100, 93 S. W. 746. 8 Ann. Cas. 328 and note, 6 L. R. A. (N. S.) 646 and note; Dobyns v. Yazoo & M. V. R. Co., 119 La. 72, 43 So. 934; Bailey v. La. & N. W. R. Co., 129 La. 1029, 57 So. 325; Wirth v. Alex Dussel Iron Works, 140 La. 1056, 74 So. 551."

The reasoning as set out in the above case is very applicable to this case.

The lower court held that the proximate cause of the accident was the negligence of the train crew in not stopping the train and in not giving the proper signals to attract the attention of deceased, and that the deceased did not assume the risk of the negligence of the train crew, and that the accident was caused by the negligence of the lessee of defendant, and that defendant was responsible for their acts. We think the finding of the lower court is correct, in that respect.

As to the amount of damages, the lower court said:

"The amount claimed for pain and suffering is $10,000.00. Dr. Lett who treated Mr. Barnes testified as to the nature of the injuries, the treatment given, the extent of pain and suffering and duration of time between the injury and death. Evidently the man suffered intensely, and for the length of time he lived, undergoing such intense suffering, the amount of damages in this respect should be substantial. The Court feels that $4,000.00 is not an excessive amount and this sum will be awarded.

"Defendant's counsel insists urgently that compensatory damages should be reduced greatly from the earnings of the deceased on account of the fact that at the time of his death and for some time prior, support was being given to an adopted child and the aged father of Mrs. Barnes in the home. The rule of law laid down in the decision cited is that the cash value is the estimate of what the deceased would have contributed to the support of his beneficiaries during the term of his life expectancy, according to the evidence in the case. It is true that the adopted child and the aged father of Mrs. Barnes will have to be eliminated from consideration as beneficiaries, as they cannot be considered as legal beneficiaries of Mrs. Barnes.

"The Court can only estimate the amount

of the husband's earnings which went to the support of the wife. According to the testimony, Mr. Barnes spent very little upon himself, and very little was evidently spent upon the father of Mrs. Barnes. Both of these men were old and lived simple lives, which necessarily called for small expenditures of cash money. The adopted child is quite young, only 9 years of age, living in the home and going to school. The actual amount of money spent for the child was likely small. Mr. Barnes was earning $1372.80 per annum. Taking into consideration the circumstances of the mode and manner of living and the ages of the husband, the father and the adopted child, the Court feels that fully the sum of $900.00 of the $1372.80 would have contributed to the support of plaintiff, and that estimate will be fixed."

The rule of law as to who is entitled to recover and the mode of arriving at the amount as set out in the opinion of the lower court is correct, but we think the amounts allowed are excessive.

In accordance with the jurisprudence of this state, we think the amount that should be allowed for the pain and suffering of the deceased should be reduced to $2,500. and the compensatory damages to the wife should be reduced from $900 of the $1,-372.80 received by deceased per annum, to $800, that would have been contributed to the support of the plaintiff per year.

Deceased was 70 years of age, and being engaged as a section foreman rated him up four years, making the basis to figure his life expectancy from as 74 years. On this basis, the life expectancy of deceased is 6 7/10 years. Using the rule laid down in the case of Jones v. Kansas City So. Ry. Co., 143 La. 307, 78 So. 568, the court fixes the cash value of $800 per year for 6 7/10 years to be as follows:

| Year | Amount | Rate | Discount | Cash Value |
|------|--------|------|----------|------------|
| 1 | $800 | 1.05 | 39.10 | $ 761.90 |
| 2 | 800 | 1.10 | 72.73 | 727.27 |
| 3 | 800 | 1.15 | 105.22 | 694.78 |
| 4 | 800 | 1.20 | 133.34 | 666.66 |
| 5 | 800 | 1.25 | 160.00 | 640.00 |
| 6 | 800 | 1.30 | 184.70 | 615.30 |
| 7 | 560 | 1.35 | 145.19 | 414.80 |
| | | | | $4520.72 |

Under the law there can be no recovery for deprivation of the comfort, society, etc. nor for mental anguish, etc., nor for doctor's bill, funeral expenses, etc., as claimed by defendant, and same were properly rejected by the lower court.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by reducing the amount of judgment in favor of plaintiff for pain and suffering of the deceased from $4,000 to $2,500 and for loss of financial support from $5,086.97 to $4,520.72, and as so amended that the judgment of the lower court be affirmed.

Costs of appeal to be paid by plaintiff and appellee.