**Beverly A. FLAGTWET, Administratrix of the Estate of Arvid H. Flagtwet, Plaintiff and Appellee,**

v.

**Dawn SMITH, Defendant and Appellant.**

**Nos. 14597, 14598.**

Supreme Court of South Dakota.

Argued Jan. 11, 1985.

Decided April 24, 1985.

Rehearing Denied May 28, 1985.

Gale Fisher of Fisher & Hughes, Sioux Falls, for plaintiff and appellee.

Chester A. Groseclose, Jr., of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for defendant and appellant.

WUEST, Acting Justice.

This appeal involves the nature, extent, and valuation of damages in a wrongful death action, pursuant to SDCL 21–5–7. We affirm in part, reverse and remand in part.

Arvid H. Flagtwet (decedent) died of injuries sustained in an automobile collision with Dawn Smith (appellant), which occurred on July 7, 1981, in Marshall County, South Dakota. In January of 1983, decedent's surviving spouse, Beverly Flagtwet (appellee), brought a wrongful death action against appellant. Liability was not seriously disputed and the trial court held that appellant's negligent failure to yield the right-of-way in compliance with SDCL 32–26–14 was the proximate cause of the accident and subsequent death of decedent.

Accordingly, the trial court determined the damages appellee is entitled to under SDCL 21–5–7, which provides: "In every action for wrongful death the jury may give such damages as they may think proportionate to the *pecuniary injury* resulting from such death to the persons respectively for whose benefit such action shall be brought." (Emphasis added.) The court held that when the decedent is an adult, the term "pecuniary injury" entails strictly economic loss. Appellee has filed a notice of review contending that the term also includes the loss of companionship and society. We agree.

In *Anderson v. Lale,* 88 S.D. 111, 121, 216 N.W.2d 152, 158 (1974), this court interpreted the term "pecuniary injury" under SDCL 21–5–7 with regard to the wrongful death of a minor child. We reasoned that if merely a child's future earnings were considered, as against the cost of raising

such child, only in rare cases would a child's earnings be more than his cost of upbringing. We therefore held that in a wrongful death action, "wherein the decedent was a minor, it is proper for the court to instruct the jury that the loss of companionship and society, which may be expressed by, but is not limited to, the words 'advice', 'assistance' and 'protection' are proper elements of damage for them to consider in reaching a verdict." 88 S.D. at 122–23, 216 N.W.2d at 158–59.

The trial court rejected our decision in *Anderson* as authority for the proposition that in a wrongful death action, wherein the decedent was an adult, the term "pecuniary injury" includes the loss of decedent's companionship and society, as well as strictly economic loss. We now hold that, regardless of the age of the decedent in a wrongful death action, it is proper for the trier of fact to consider the loss of decedent's companionship and society resulting from such death when determining the pecuniary injury to the persons for whose benefit such action is brought under SDCL 21–5–7.

That the term "pecuniary injury" is vague, ambiguous, and susceptable to judicial interpretation is apparent.[1] Many courts have struggled mightily with a modern definition of the term. *See, e.g., Smith v. City of Detroit,* 388 Mich. 637, 202 N.W.2d 300 (1972); *Breckon v. Franklin Fuel Company,* 383 Mich. 251, 174 N.W.2d 836 (1970); *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W.2d 118 (1960); *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355 (1961); *Selders v. Armentrout,* 190 Neb.

---

1. *See, e.g., Gluckauf v. Pine Lake Beach Club, Inc.,* 78 N.J.Super. 8, 187 A.2d 357 (1963), (the words pecuniary injuries within wrongful death statute mean the deprivation of a reasonable expectation of a pecuniary advantage, which would have resulted by continuance of life of the deceased); *Hall v. Gillins,* 13 Ill.2d 26, 147 N.E.2d 352 (1958) (such compensation includes damages for deprivation of support, companionship, guidance, advice, love and affection of the deceased); *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (a pecuniary loss is a loss of money, or of something by which money or something of money value may be acquired); *Standard Forgings Co. v. Holmstrom,* 58 Ind.App. 306, 104 N.E. 872 (1914) (as applied to a dependent's loss from death, pecuniary loss means the reasonable expectation of pecuniary benefit from the continued life of the deceased to be inferred from proof of assistance by way of money, services, or other material benefits rendered prior to death).

275, 207 N.W.2d 686 (1973); *Hodkinson v. Parker*, 70 S.D. 272, 16 N.W.2d 924 (1944).

Lord Campbell's Act, which served as a model for most American wrongful death acts, including our own, did not contain the words "pecuniary injury," or anything similar. Lord Campbell's Act provided: "[I]n every [wrongful death] action the jury may give such damages as they may think proportionate to the *injury* resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought." [2] Because of the inherent difficulties in evaluating injuries to sentiments and affections resulting from death, "injury," as contained within Lord Campbell's Act, was narrowly construed to afford beneficiaries in wrongful death actions only damages for losses deemed "strictly" economic, or those items which could arguably be measured in specific dollars and cents.[3] The rationale was that compensation for such things as companionship, society, grief, and mental anguish is too speculative. Thus, in an attempt to create a meaningful term of art from which to quantify the value of a human life, courts added the word "pecuniary" to injury, and the term "pecuniary injury" was subsequently codified in many wrongful death acts.[4]

More recently, courts have recognized that the measure of "pecuniary injury" in wrongful death actions as "strictly" economic loss, is unduly restrictive. *See, e.g.,*

*Fussner v. Andert, supra.* Courts have allowed recovery for the loss of society, association, companionship, comfort, affection of the decedent, and acts of kindness which originated in the relationship between the decedent and the beneficiaries, in cases involving claims for the benefit of the decedent's parents, child, widow, widower, and collateral relatives.[5] Generally, however, compensation for injured feelings or "solatium" is still prohibited, and grief and sorrow are not considered items of pecuniary loss.

In *Anderson, supra,* we traced the history of SDCL 21–5–7 from its genesis in 1877, through various amendments and decisions construing the measure of damages recoverable therein, to the 1967 amendment which changed the term "all injury" to "pecuniary injury," thereby reenacting the statute as it existed in a period prior to 1947. Mindful of the fact that the term "pecuniary injury," as contained within SDCL 21–5–7, requires an interpretation based on legislative intent, we rejected the notion that the 1967 Legislature's reenactment of the pre-1947 statute was merely a codification of our pre-1947 decisions. These decisions construed the statute to disallow wrongful death recovery for loss of companionship, association, and advice.[6] We stated "that the 1967 legislature was well aware of the newer interpretations of pecuniary loss [or] injury, and it was their intent to only eliminate any recovery for

**2.** Officially, Fatal Accidents Act, 1846, 9 & 10 Vict. c. 93.

**3.** *See, e.g., Barnes v. Red River & G.R.R., Co.,* 14 La.App. 188, 128 So. 724 (1930), holding that the jury should take into account only such compensation to the surviving members of the deceased's family as would supply to them the same results as would have followed from his labor during the probable period he would otherwise have lived and earned a livelihood.

**4.** *See generally* Comment, *South Dakota Wrongful Death: Loss of Society and Companionship as Pecuniary Loss,* 13 S.D.L.Rev. 232 (1968); Note, *Wrongful Death and Intellectual Dishonesty,* 16 S.D.L.Rev. 36 (1971).

**5.** *See, e.g., Lithgow v. Hamilton,* 69 So.2d 776 (Fla.1954); *Aardema v. United States,* 444 F.Supp. 1354 (C.D.Cal.1977); *Mascuilli v. United*

*States,* 343 F.Supp. 439 (E.D.Pa.1972); *Mize v. Atchison, Topeka, & Santa Fe Railway Company,* 46 Cal.App.3d 436, 120 Cal.Rptr. 787 (1975); *Newland v. Holland,* 624 P.2d 933 (Colo.App. 1981); *Kraus v. Ford Motor Co.,* 55 A.D.2d 851, 390 N.Y.S.2d 495 (1976); *Borak v. Bridge,* 524 S.W.2d 773 (Tex.Civ.App.1975).

**6.** *Belding v. Black Hills & Ft. P.R. Co.,* 3 S.D. 369, 53 N.W. 750 (1892); *Smith v. Chicago, M. & St. P. Ry. Co.,* 6 S.D. 583, 62 N.W. 967 (1895); *Smith v. Presentation Academy of Aberdeen,* 61 S.D. 323, 248 N.W. 762 (1933); *Tufty v. Sioux Transit Co.,* 69 S.D. 368, 10 N.W.2d 767 (1943); *Hodkinson v. Parker,* 70 S.D. 272, 16 N.W.2d 924 (1944); Comment, South Dakota Pattern Jury Instruction No. 31.02.

sorrow, mental distress and grief suffered by the parents or any pain or suffering on the part of the decedent." 88 S.D. at 121, 216 N.W.2d at 158.

As we also stated in *Anderson*, 88 S.D. at 117, 216 N.W.2d at 155–56, our Wrongful Death Act "is remedial in character and, therefore, should be construed liberally in light of current social conditions." We believe that this premise is paramount to the premise that society and companionship may not be considered by the trier of fact because they are too speculative. For as the Supreme Court of Michigan reasoned in the landmark decision in *Wycko*, 361 Mich. at 340, 105 N.W.2d at 123: "it is not the privilege of him whose wrongful act caused the loss to hide behind the uncertainties inherent in the very situation his wrong created." Moreover, we noted in *Hoekstra v. Helgeland*, 78 S.D. 82, 107, 98 N.W.2d 669, 682 (1959), that:

> Juries are being asked daily to place values for similar damages in alienation of affection actions, on pain and suffering, to balance slight against gross negligence and mitigate damages accordingly in personal injury actions, on malice in actions where exemplary damages are allowable and in other cases which are as difficult as the case before us, so this should not be set up as a bar or argument against such recovery.

In this age of dangerous instrumentalities capable of ending life in a negligent instant, we allow recovery for wrongful death, and thereby acknowledge that persons have rights in their familial relations. Unpersuasive are the arguments for differentiating between the loss of decedent's wages, which are statistical projections of possible future earnings based on the laws of probability, and the benefits of companionship and society. While future earnings are more readily ascertainable than companionship and society, and the latter are, indeed, inestimable in terms of emotional loss, both are substitutionary relief, and

both involve speculation on a future existence that will never be. Public policy mandates that the wrongdoer, and not the innocent victim, bear the burden of an imperfect system of valuation, in order to enhance the deterrent effect of our wrongful death act. As to this, Dean Prosser states:

> The "prophylactic" factor of preventing future harm has been quite important in the field of torts. The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm.

Prosser & Keeton, *On Torts*, § 4, at 25 (5th ed. 1984).

■ The measure of "pecuniary injury" as strictly economic loss is unduly restrictive and does not conform to present-day considerations. Therefore, we hold that regardless of the age of the decedent in a wrongful death action, under SDCL 21–5–7, the trier of fact may consider the loss of a decedent's companionship and society as expressed by, but not limited to, the words "advice," "assistance" and "protection," but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death. Accordingly, we remand this issue to the trial court for consideration of these elements in the determination of appellee's damages.

Appellee called Dr. Ralph J. Brown as an expert witness to assist the court in determining the amount of economic loss to appellee. Dr. Brown is a Professor of Economics at the University of South Dakota Business School, and a recognized expert at projecting the value of lost earnings and lost earning capacity resulting from personal injury and death.[7]

To compute the economic loss to appellee as the result of her husband's death, Dr. Brown estimated what the total amount of

---

7. *See, e.g.,* Brown & Johnson, *Wrongful Death and Personal Injury: Economics and the Law,* 29 S.D.L.Rev. 1 (1983).

decedent's future earnings would have been, less the amount he would have consumed had he lived. Using life expectancy tables and various methods of statistical analysis, Dr. Brown determined appellee's total economic loss to be $340,312. To find the present value of this amount, Dr. Brown employed the "total offset" method, or the "Alaska Rule," as it is sometimes called, rather than a rule known as the "discount rate" method. Under the "total offset" method, the court does not discount the award to its present value, but assumes that the effect of the future inflation rate will completely offset the interest rate, thereby eliminating any need to discount the award to its present value.

The trial court adopted Dr. Brown's use of the "total offset" method stating:

Under the facts of the particular case, the [c]ourt feels the total offset method to be the better approach for the following reasons: The total offset method has been thoroughly explained and advocated by Dr. Brown, a recognized expert. The defendant has presented no expert testimony in support of the present value approach. In addition, the total offset method is more in accord with the "fault" concept. As this case demonstrates, there is a great deal of uncertainty which surrounds damage awards due to uncertainties in interest rates and inflation trends. There is no method that can assure absolute accuracy. Recognizing then that no system is absolutely perfect if anyone is going to be penalized, the total offset method penalizes the tort feasor, not the innocent party.

Appellant appeals from the trial court's adoption of Dr. Brown's analysis as to the damage award, contending: (1) that the "total offset" method is not the proper method to reduce projected future pecuniary benefits to present value; (2) that it was improper to use gross income rather than net income figures in estimating decedent's past and future income; (3) that the

amount which would have been paid to decedent as his pension was improperly computed; and (4) no factual support exists for inclusion by Dr. Brown of various items in computing the present value of decedent's projected fringe benefits.

Inasmuch as appellant failed to call her own expert, and merely cross-examined appellee's expert, Dr. Brown, we find these contentions of little merit. As the trial court noted in its memorandum opinion, "neither the South Dakota Supreme Court nor the United States Supreme Court have endorsed or repudiated either the 'total offset' method used by Dr. Brown or the 'discount rate' method." Indeed, while we acknowledged with approval in *Watkins v. Ebach*, 291 N.W.2d 765 (S.D.1980), the prevailing rule that damages for loss of future earnings should be reduced to present value, we concluded that because appellant offered no guidance from a qualified expert upon which the jury could have made an intelligent decision on reducing the award to present value, the record did not support the giving of such an instruction.

 In the instant case, we have a situation where one party to the action presented expert testimony to support its theory as to the proper measure of damages. SDCL 19–15–2 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

This court has long held that whether or not expert opinion testimony should be permitted on a particular subject as well as the qualifications and competency of the proffered witness to give opinion evidence, is primarily in the discretion of the trial court and will not be disturbed unless there is no evidence that the witness had qualifications of an expert or the trial court has proceeded upon erroneous legal standards.

*Carlson v. Rysavy*, 262 N.W.2d 27, 33 (S.D. 1978); *see also Morin v. Chicago and Northwestern Railway System*, 87 S.D. 447, 209 N.W.2d 895 (1973); *State v. Riiff*, 73 S.D. 467, 44 N.W.2d 126 (1950).

■ We do not believe that the trial court abused its discretion in permitting the testimony of Dr. Brown. As a Professor of Economics and noted authority on the instant issue, Dr. Brown is more than sufficiently qualified and the trial court was not proceeding upon erroneous legal standards. Moreover, because the amount of damages to be awarded is a factual issue to be determined by the trier of fact, we review the issue on appeal under the clearly erroneous standard. *See Pope v. Brown*, 357 N.W.2d 510 (S.D.1984). Appellant presented no expert opinion evidence from which we could find the trial court's adoption of Dr. Brown's analysis clearly erroneous; appellant merely cross-examined Dr. Brown. Consequently, we affirm the trial court's adoption of Dr. Brown's analysis as to the amount of damages, and while we neither endorse nor repudiate the "total offset" method for the future, we hold that it is the law of the case. Accordingly, we affirm the trial court on this issue.

FOSHEIM, C.J., and MORGAN and HENDERSON, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

WOLLMAN, Justice (concurring in part, dissenting in part).

Although *Anderson v. Lale*, 88 S.D. 111, 216 N.W.2d 152 (1974), represents the law of this state insofar as the recovery for the wrongful death of a minor is concerned, I would not extend the rule of that case to wrongful death actions involving adults.

I agree with the majority opinion's holding that for the purposes of this case the trial court did not err in adopting Dr. Brown's total offset method of calculating appellee's economic loss.